# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

LARICCA SEMINTA MATHEWS,

Defendant-Appellee.

FOR PUBLICATION
May 22, 2018
9:10 a.m.

No. 339079
Oakland Circuit Court
LC No. 2016-260482-FC

Before: O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

HOEKSTRA, J.

Defendant has been charged with open murder, MCL 750.316, discharge of a firearm in a building, MCL 750.234b, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. Before trial, defendant filed a motion to suppress statements she made to police based on the contention that police failed to adequately advise her of her rights as required by *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The trial court granted defendant's motion. The prosecution filed an interlocutory application for leave to appeal in this Court, which we denied.[1] The prosecutor then filed an application for leave to appeal in the Michigan Supreme Court, and in lieu of granting leave, the Supreme Court remanded to this Court for consideration as on leave granting, specifically instructing this Court "to consider whether either of the bases for suppression advanced by the defendant in the trial court rendered the warning in this case deficient" under *Miranda*. *People v Mathews*, 501 Mich 950 (2018). On remand, we find no merit to defendant's assertion that the police were required to inform her that she could cut off questioning at any time during the interrogation. However, because generally advising defendant that she had "a right to a lawyer" did not sufficiently convey her right to consult with an attorney and to have an attorney present during the interrogation, we conclude that the *Miranda* warnings in this case were defective and we affirm the trial court's suppression of defendant's statement.

This case arises from the shooting death of defendant's boyfriend, Gabriel Dumas, who was killed in defendant's apartment on August 12, 2016. After the shooting, defendant called

---

[1] *People v Mathews*, unpublished order of the Court of Appeals, entered August 23, 2017 (Docket No. 339079).

-1-

911 and told the dispatcher that she had shot Dumas. Police responded to the scene, and defendant was taken into custody and transported to the Wixom Police Department. At the police station, defendant was interviewed twice. Detective Brian Stowinsky conducted the first interview. During the first interview, Stowinsky presented defendant with a written advice of rights form which stated:

> Before any questions are asked of you, you should know: (1) you have a right to remain silent; (2) anything you say may be used against you; (3) you have a right to a lawyer, and (4) if you cannot afford a lawyer, one will be provided free.
>
> I understand what my rights are and am willing to talk.

Stowinsky also orally reviewed the statements on the advice of rights form with defendant. Specifically, the following exchange took place:

> Detective Stowinsky: OK, um, I'm going to review these, ok?
>
> Defendant: Uh hmm.
>
> Detective Stowinsky: I'm going to read these to you.
>
> Defendant: Uh hmm.
>
> Detective Stowinsky: Um, before I question, start asking you, you should know that you have a right to remain silent.
>
> Defendant: Uh hmm.
>
> Detective Stowinsky: Anything you say maybe [sic] used against you. You have a right to a lawyer, if you cannot afford a lawyer, one will be provided for free. Do you understand your rights?
>
> Defendant: Yes.

Defendant agreed to talk with Stowinsky and she signed the advice of rights form. During the questioning that followed, defendant told Stowinsky that she quarreled with Dumas, that Dumas attacked her, and that she shot him.

Later the same day, defendant was interviewed a second time by Sergeant Michael DesRosiers. At the beginning of that second interview the following exchange took place between defendant and DesRosiers:

> Sergeant DesRosiers: Alright, so um, Detective Stowinsky, remember he talked about your rights and everything?
>
> Defendant: Uh hmm.

Sergeant DesRosiers: Same thing applies. Um, you don't, you don't have to even talk to me if you don't want to. You can get an attorney um, if you can't afford one, we'll make sure you get one.

Defendant: OK.

Sergeant DesRosiers: So, um, we're just continuing the interview that you started with him.

DesRosiers then proceeded to question defendant about inconsistencies between her previous statements and the physical evidence, including the location of Dumas's fatal bullet wound. Defendant again admitted shooting Dumas, and she attempted to explain the location of the bullet wound by suggesting that the bullet may have ricocheted. She also suggested that the shooting may have been an accident insofar as her finger may have "slipped" while on the trigger because it was "so hot and muggy."

Following a preliminary examination, defendant was bound over for trial in the circuit court. In the circuit court, defendant filed a motion to suppress her statements to the police, asserting that the *Miranda* warnings given before her interviews were inadequate because (1) the police failed to advise her that she could terminate the interrogation at any point and (2) the police did not inform her that she had the right to consult with an attorney before the interview and to have an attorney present during the interrogation. The trial court did not address whether police were required to inform defendant that she had an ongoing right to cut off questioning at any point. Nevertheless, the trial court granted defendant's motion to suppress, reasoning that the *Miranda* warnings were defective because police failed to inform defendant that she had the right to have an attorney present before and during the interrogation. The prosecutor filed an interlocutory application for leave to appeal, and the case is now before us on remand from the Michigan Supreme Court for consideration as on leave granted.

On appeal, the prosecution argues that the warnings given to defendant complied with *Miranda* and that the trial court erred by suppressing defendant's statements to police. First, with regard to a suspect's right to cut off questioning, the prosecution asserts that *Miranda* does not require police to give an explicit warning that a suspect may terminate the interrogation at any time. Second, in terms of a suspect's right to the presence of counsel, the prosecution argues that, although the warnings given to defendant did not expressly advise her of her right to the presence of counsel during the interrogation, the warnings given before defendant's interrogations were sufficient because they advised defendant that she had the right to a lawyer. According to the prosecutor, *Miranda* does not require the police to provide a suspect with more specific information regarding the right to the presence of an attorney before and during questioning.

When reviewing a decision on a motion to suppress, we review a trial court's factual findings for clear error. *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id*. (quotation marks and citation omitted). "We review de novo a trial court's ultimate decision on a motion to suppress." *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001).

"Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). To protect this constitutional guarantee against compelled self-incrimination, before any custodial interrogation, the police must give a suspect the now-familiar *Miranda* warnings. *People v Daoud*, 462 Mich 621, 624 n 1; 614 NW2d 152 (2000). In particular, under *Miranda*, a suspect must be provided four essential warnings as follows:

"[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." [*Florida v Powell*, 559 US 50, 59-60; 130 S Ct 1195; 175 L Ed 2d 1009 (2010), quoting *Miranda*, 384 US at 479 (alterations in *Powell*).]

"The four warnings *Miranda* requires are invariable, but [the United States Supreme Court] has not dictated the words in which the essential information must be conveyed." *Powell*, 559 US at 60. In other words, "[a] verbatim recital of the words of the *Miranda* opinion is not required." *People v Hoffman*, 205 Mich App 1, 14; 518 NW2d 817 (1994). "Quite the contrary, *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." *California v Prysock*, 453 US 355, 359; 101 S Ct 2806; 69 L Ed 2d 696 (1981) (per curiam). Rather, when the "exact form" set out in *Miranda* is not used, "a fully effective equivalent" will suffice. *Duckworth v Eagan*, 492 US 195, 202; 109 S Ct 2875; 106 L Ed 2d 166 (1989) (quotation marks and italics omitted). "Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Id*. at 203. "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Id*., quoting *Prysock*, 453 US at 361. Ultimately, "[i]f the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013).

## A. RIGHT TO CUT OFF QUESTIONING

In the trial court, defendant challenged the adequacy of the *Miranda* warnings on two grounds. First, defendant argued that the right to cut off questioning is a "critical safeguard" under *Miranda*, and that police were thus required to warn defendant that she could cease answering questions at any point. Although police informed defendant of her right to remain silent, she asserts that her statement must be suppressed because she was not more specifically informed that she could terminate the interrogation at any time. This argument is without merit.

As noted, *Miranda* requires police to provide a suspect with four—and only four—essential warnings: "[1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Powell*, 559 US at 59 (quotation marks and citation omitted). See also *United States*

*v Crumpton*, 824 F3d 593, 611 (CA 6, 2016).[2]  From a simple review of these warnings, it is clear that the right to cut off questioning is not among the specific enumerated warnings which must be given.[3]  See *United States v Ellis*, 125 Fed App'x 691, 699 (CA 6, 2005) ("[A] statement instructing [a suspect] that he has the right to stop answering questions at any point after questioning has begun, is not a phrase that the Supreme Court in *Miranda* suggested should be read to criminal suspects before interrogation.").  It is true that, as emphasized by defendant, "[a] 'critical safeguard' identified in *Miranda* was a person's right to cut off questioning." *People v Adams*, 245 Mich App 226, 231; 627 NW2d 623 (2001), quoting *Michigan v Mosley*, 423 US 96, 103; 96 S Ct 321; 46 L Ed 2d 313 (1975).  As explained in *Miranda*:

> *Once warnings have been given, the subsequent procedure is clear.*  If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.  At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.  Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. [*Miranda*, 384 US at 473-474 (emphasis added).]

However, contrary to defendant's arguments, this "subsequent procedure" to cut-off questioning as described in *Miranda* does not establish a "special warning requirement" regarding the right to terminate an interrogation. *People v Tubbs*, 22 Mich App 549, 555-556; 177 NW2d 622 (1970).[4]  Instead, this right to end the interrogation is merely a means of exercising the right to remain silent.  See *id.*; *United States v Alba*, 732 F Supp 306, 310 (D Conn, 1990) ("The right to cut off questioning is not one of the essential Fifth Amendment rights;" rather, it is "a way in which [a suspect] might have manifested his wish to invoke his right to remain silent.").  An individual

---

[2] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

[3] It is apparently not uncommon for law enforcement officials to include some type of "fifth prong" or "catch-all" provision in the recitation of *Miranda* warnings, advising suspects that their rights may be asserted at any point during the interrogation.  See Richard Rogers, et al, *The Language of Miranda Warnings in American Jurisdictions:  A Replication and Vocabulary Analysis*, 32 Law & Human Behavior 124, 131 (2008) (reporting that over 80 percent of jurisdictions include a "fifth prong").  See, e.g., *Powell*, 559 US at 55 (involving a catch-all addition to the *Miranda* warnings in which the suspect was told that he had "the right to use any of these rights at any time you want during this interview").  But, the fact remains that *Miranda* itself did not include such a warning.

[4] Although published decisions of this Court issued before November 1, 1990 are not precedentially binding, MCR 7.215(J)(1), they may be considered as persuasive authority. *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011).

who has been informed in "clear and unequivocal terms" at the outset of the interrogation that "he has the right to remain silent" will understand "that his interrogators are prepared to recognize his privilege should he choose to exercise it." *Miranda*, 384 US at 467-468. See also *Colorado v Spring*, 479 US 564, 574; 107 S Ct 851, 857; 93 L Ed 2d 954 (1987) (recognizing that a suspect advised of his *Miranda* warnings "knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time"). Consequently, when a defendant has been advised of his or her right to remain silent as required by *Miranda*, police need not also expressly inform the defendant that this right to remain silent may be exercised to cut off questioning at any point during the interrogation. See *Tubbs*, 22 Mich App at 555; see also *Crumpton*, 824 F3d at 611 ("[A] defendant need not be informed of a right to stop questioning after it has begun.") (quotation marks and citation omitted); *United States v Lares-Valdez*, 939 F2d 688, 690 (CA 9, 1991) ("*Miranda* requires that [the suspect] understood the right to remain silent; when and how he then chose to exercise that right is up to him."). Because defendant was advised of her right to remain silent, the *Miranda* warnings were not defective merely because she was not more specifically advised that she could exercise this right at any point during the interrogation.

## B. RIGHT TO THE PRESENCE OF AN ATTORNEY

In the lower court, defendant argued and the trial court agreed, that a general warning regarding the "right to a lawyer" did not adequately inform defendant of her right to have an attorney present before and during the interrogation. Although there is conflicting authority on this issue, we agree with the trial court and we hold that a general warning regarding a "right to a lawyer" does not comply with the dictates of *Miranda*. Consequently, we affirm the trial court's suppression of defendant's statements.

We begin our analysis by again noting what is required by *Miranda*. As explained by the United States Supreme Court:

> "[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." [*Powell*, 559 US at 59-60, quoting *Miranda*, 384 US at 479 (alterations in *Powell*).]

It is the third warning—the "right to the presence of an attorney"—which is at issue in this case. Under *Miranda*, in the context of custodial interrogation, the right to the presence of counsel was recognized as "indispensable to the protection of the Fifth Amendment privilege." *Miranda*, 384 US at 469. As "a corollary of the right against compelled self-incrimination," the right to the presence of counsel "affords a way to 'insure that statements made in the government-established atmosphere are not the product of compulsion.'" *Tanner*, 496 Mich at 207, quoting *Miranda*, 384 US at 466. Notably, this "need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Miranda*, 384 US at 470. Thus, "as 'an absolute prerequisite to interrogation,'" the United States Supreme Court has held that "an individual held for questioning 'must be clearly informed that he has the right to

consult with a lawyer and to have the lawyer with him during interrogation.' " *Powell*, 559 US at 60, quoting *Miranda* 384 US at 471.

Recognizing that *Miranda* mandates advice regarding the right to the presence of counsel, while also acknowledging that a talismanic incantation of the *Miranda* warnings is not required, *Prysock*, 453 US at 359, the question before us in this case is whether a general warning before an interrogation, advising the suspect that she has a "right to a lawyer," reasonably conveys to a suspect that she has the right to consult with a lawyer before questioning and to have a lawyer present during the interrogation. We are not aware of any binding caselaw resolving this issue. On appeal, the prosecutor asserts that specific information regarding the right to the presence of counsel during interrogation is unnecessary in light of controlling United States Supreme Court precedent—namely, *Powell*, 559 US at 50; *Duckworth*, 492 US at 195; and *Prysock*, 453 US at 355. Certainly, as discussed, these cases stand for the proposition that no exact, talismanic incantation of the *Miranda* warnings is required. See *Powell*, 559 US at 60; *Duckworth*, 492 US at 202; *Prysock*, 453 US at 359. But, none of these cases involved a barebones warning that the suspect had "a right to an attorney." To the contrary, *Prysock* and *Duckworth* both involved situations in which the suspect was undoubtedly told of the right to consult with an attorney and to have an attorney present during questioning, and the *Miranda* challenge related to whether information, or lack of information, regarding when counsel would be appointed rendered the warnings deficient. See *Duckworth*, 492 US at 203 (reviewing warning in which suspect was told, in part, that "he had the right to speak to an attorney before and during questioning" and the he had "right to the advice and presence of a lawyer even if [he could] not afford to hire one"); *Prysock*, 453 US at 356 (involving warning in which suspect was told that he had "the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning"). *Powell* is perhaps the closest factual situation to the present case, but it too is distinguishable. There, in relevant part, the suspect was told:

> You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview. [*Powell*, 559 US at 54.]

The purported deficiency in the warnings in *Powell* was that informing a suspect that he had a right to talk to a lawyer *before* answering questions would mislead a suspect by suggesting that the right to consult an attorney did not also exist *during* the interrogation. *Powell*, 559 US at 55. In rejecting this argument, the Court read the warning as a whole and concluded that the warning communicated that the suspect could consult with a lawyer "before" answering questions and that, because this right could also be used at any time "during" the interview, it also conveyed the suspect's right to have an attorney present at all times.[5] *Powell*, 559 US at 62. The warning

---

[5] The dissent emphasizes that the warnings given to defendant in this case were prefaced with the word "before," and the dissent concludes that this was sufficient to convey to defendant her right to an attorney before questioning as well as during questioning. This reliance on the word "before" is unpersuasive for two reasons. First, the word "before" is not used in the warnings as

in *Powell* thus plainly conveyed the critical information about a suspect's right to counsel—i.e., "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id*. at 60, quoting *Miranda*, 384 US at 471 (quotation marks omitted). See also *id*. at 62 n 5. In short, none of the Supreme Court cases cited by the prosecution involved warnings comparable to those in this case and none of these cases resolved the issue now before us. Ultimately, we not aware of any binding caselaw addressing the precise issue before us.

Although there is no binding authority, the issue of whether a general warning of the "right to an attorney" satisfies *Miranda*'s strictures has been considered by numerous courts, including this Court. In several decisions from this Court issued soon after *Miranda* was decided, this Court concluded that general warnings, such as informing a suspect that he was "entitled to an attorney," did not comply with *Miranda* because such warnings did not sufficiently convey a suspect's right to the presence of an attorney during questioning. *People v Whisenant*, 11 Mich App 432, 434, 437; 161 NW2d 425 (1968). See also *People v Hopper*, 21 Mich App 276, 279; 175 NW2d 889 (1970); *People v Jourdan*, 14 Mich App 743, 744; 165 NW2d 890 (1968). While non-binding under MCR 7.215(J)(1), this Court's opinions indicate that, to comply with *Miranda*, police must impart more than a broad warning regarding the right to counsel; that is, the warning must somehow convey the right to have counsel *present* during the interrogation. See *People v Johnson*, 90 Mich App 415, 419-420; 282 NW2d 340 (1979) (distinguishing cases with warnings regarding the right "to an attorney" from those involving the right to have an attorney "present"). Similarly, numerous courts from other jurisdictions have interpreted *Miranda* as requiring police to explicitly inform a suspect of the right to the presence of counsel before and during the interrogation. See, e.g., *Bridgers v Dretke*, 431 F3d 853, 860 n 6 (CA 5, 2005) ("[A] suspect must be explicitly warned that he has the right to counsel during interrogation."); *United States v Tillman*, 963 F2d 137, 140-142 (CA 6, 1992) ("[T]he police failed to convey to defendant that he had the right to an attorney both before, during and after questioning."); *Smith v Rhay*, 419 F2d 160, 163 (CA 9, 1969) ("Although [the suspect] was told that he had the right to an attorney, he was not . . . told, as required by *Miranda*, that he had the right to the presence of an attorney[.]"); *State v McNeely*, 162 Idaho 413, 416; 398 P3d 146, 149 (2017) (concluding that warning regarding "the right to an attorney . . . [to] help with—stuff" did not adequately convey right to the presence of counsel before and during questioning); *Coffey v*

---

an indication of *when* defendant's right to counsel exists. That is, she was not told that she had a right to an attorney before questioning; rather, she was told that before any questions were asked, she should know that she has a right to an attorney. Second, even if the use of "before" is read to have informed defendant of her right to counsel *before* questioning, contrary to the dissent's conclusion, there is a meaningful difference between the right to consult a lawyer before questioning and the right to have a lawyer present during questioning. Indeed, the warning in *Powell* was found adequate because it conveyed the right to counsel, "not only at the outset of interrogation, but at all times" during the interrogation. *Powell*, 559 US at 62. If anything, the argument could be made that the use of the term "before," without any indication that the right also applied during the interrogation, functioned as an improper temporal limitation, suggesting that the right to counsel existed before any questions were asked, but not during questioning.

*State*, 435 SW3d 834, 841-842 (Tex App, 2014) (holding that pre-interrogation warning that the defendant had "the right to an attorney" did not comply with *Miranda*).

Courts requiring an explicit warning regarding the right to the presence of counsel during the interrogation—as opposed to simply the right to an attorney—have "stressed the importance of informing defendants that they have the right to the actual *physical presence* of an attorney," *United States v Noti*, 731 F2d 610, 615 (CA 9, 1984), and emphasized the significance of advising defendants of the temporal immediacy of the right to counsel, see, e.g., *State v Williams*, 144 So 3d 56, 59 (La Ct App, 2014) (recognizing that *Miranda* does not require a verbatim recitation, but concluding that the "temporal requirement that the right to the lawyer attaches before and during any interrogation is key"); *United States v Takai*, 943 F Supp 2d 1315, 1326 (D Utah, 2013) (concluding that "warning was defective because it omitted reference to Defendant's right to have an attorney present during questioning, i.e. at the present time"). See also *State v Carlson*, 228 Ariz 343, 346; 266 P3d 369 (2011) (distinguishing "mere eventual representation by an attorney" from the right to the presence of an attorney that "applied before, and continued during, any questioning"). Likewise, as noted, this Court has previously acknowledged that *Miranda* warnings must provide a suspect with temporal information regarding the immediate right to the presence of counsel during questioning. See *Whisenant*, 11 Mich App at 437. For example, in *Johnson*, 90 Mich App at 420, we found a warning that the defendant "had the right to have an attorney present" sufficient to convey the essential information required by *Miranda* because the right to have an attorney *present* "cannot reasonably be understood otherwise than as informing defendant of his right to counsel *during interrogation* and not merely at some subsequent trial."[6] While no specific language is required, these cases persuasively recognize, based on *Miranda*'s requirements, that the advice regarding counsel must convey "the immediacy of the right in the sense that it exists both before and during interrogation." 2 LaFave et al., Criminal Procedure (4th ed.), § 6.8(a), pp 886-887.

While there is authority recognizing the necessity of an explicit warning regarding the presence of counsel during the interrogation, courts are by no means uniform in reaching this conclusion. See *Bridgers*, 431 F3d at 859 (describing split among federal circuit courts as to whether *Miranda* warnings must explicitly provide that a suspect is entitled to the presence of counsel during an interrogation). Unlike courts concluding that *Miranda* warnings must contain information regarding the right to the presence of counsel during an interrogation, numerous other courts reason that *Miranda* does not require "highly particularized warnings" regarding "all possible circumstances in which *Miranda* rights apply." *United States v Frankson*, 83 F3d 79, 82 (CA 4, 1996). Consequently, these cases conclude that when police provide a generalized warning regarding the "right to an attorney"—without any temporal qualifications or limitations on that right—the police have complied with *Miranda* because a reasonable person would understand that an unqualified right to an attorney begins immediately and continues forward in

---

[6] Numerous decisions from the Michigan Supreme Court have similarly quoted formulations of the *Miranda* warnings that convey the right to the "presence of an attorney" or more specifically the right to "the presence of an attorney during any questioning." See, e.g., *Tanner*, 496 Mich at 207 n 3; *Elliott*, 494 Mich at 301; *Daoud*, 462 Mich at 624 n 1.

time without qualification. *Id*. See also *United States v Warren*, 642 F3d 182, 185-187 (CA 3, 2011) ("[I]t cannot be said that the *Miranda* court regarded an express reference to the temporal durability of [the right to an attorney] as elemental to a valid warning."); *United States v Caldwell*, 954 F2d 496, 502 (CA 8, 1992) (concluding, under plain error review, that warning of the "right to an attorney" was not deficient because there was nothing "suggesting a false limitation" on the right to counsel and thus the suspect was not "actively misled"); *United States v Lamia*, 429 F2d 373, 376-377 (CA 2, 1970) (holding that failure to inform the defendant that he had the right to the "presence" of an attorney did not render warnings deficient when he had been told "without qualification that he had the right to an attorney"); *Carter v People*, 398 P3d 124, 128 (Colo, 2017), as mod on denial of reh (July 31, 2017) ("[I]t would be highly counterintuitive for a reasonable suspect in a custodial setting, who has just been informed that the police cannot talk to him until after they advise him of his rights to remain silent and to have an attorney, to understand that an interrogation may then proceed without permitting him to exercise either of those rights."); *People v Walton*, 199 Ill App 3d 341, 344-345; 556 NE2d 892 (1990) ("While the better practice would be for the police to make explicit that defendant's right to consult with a lawyer may be both before and during any police interrogation, we hold that the language used in this case [that the defendant had a right to consult with a lawyer] was sufficient to *imply* the right to counsel's presence during questioning" because "no restrictions were stated by the police in the present case as to *how, when,* or *where* defendant might exercise his right to consult with a lawyer.").[7]   Under these cases, provided that no improper or misleading

_____

[7] In support of the conclusion that general warnings are sufficient, some of these cases also note that *Miranda* discussed, with apparent approval, the warnings given by the FBI at the time *Miranda* was decided. See, e.g., *Warren*, 642 F3d at 185; *Lamia*, 429 F2d at 376. As set forth in *Miranda*, at that time the FBI's practice was to warn a suspect that "he is not required to make a statement, that any statement may be used against him in court, that the individual may obtain the services of an attorney of his own choice and, more recently, that he has a right to free counsel if he is unable to pay." *Miranda*, 384 US at 483. Because the FBI warnings discussed in *Miranda* did not contain a temporal reference to a suspect's right to the presence of counsel during the interrogation, cases such as *Warren* and *Lamia* reason—and the prosecutor argues on appeal—that *Miranda* does not contain such a requirement. Admittedly, there is tension between what *Miranda*, 384 US at 479, demanded and what the FBI warnings discussed in *Miranda* conveyed. Indeed, in dissenting opinions to *Miranda*, Justice Clark and Justice Harlan both opined that the FBI warnings in question did not satisfy the strictures laid down by the *Miranda* majority. See *id*. at 501 n 3 (CLARK, J., dissenting); *id*. at 521 (HARLAN, J., dissenting). It does not appear that the Supreme Court has resolved this tension. See *Powell*, 559 US at 74 n 8 (STEVENS, J., dissenting) (expressing doubt as to whether "warning a suspect of his 'right to counsel,' without more, reasonably conveys a suspect's full rights under *Miranda*"). Moreover, we note that the discussion of FBI practices in the *Miranda* majority was immediately followed by a discussion of the then-current practices in England, Scotland, India, Ceylon, and the United States Military Courts in the larger context of responding to concerns that pre-interrogation warnings would place an undue burden on investigators and detrimentally effect criminal law enforcement. See *id*. at 481-489. Given the context in which the *Miranda* Court expressed approval of the FBI's warnings and the difference of opinion that currently exists among the

-10-

limitations on the right to counsel are expressly communicated, a general warning regarding the "right to counsel" is sufficient to comply with *Miranda*'s requirements.

Considering the conflicting persuasive authority, we conclude that the essential information required by *Miranda* includes a temporally-related warning regarding the right to consult an attorney and to have an attorney present during the interrogation, not merely general information regarding the "right to an attorney." Consequently, we reaffirm our decision in *Whisenant*, 11 Mich App at 437, and we hold that a warning preceding a custodial interrogation is deficient when the warning contains only a broad reference to the "right to an attorney" that does not, when the warning is read in its entirety, reasonably convey the suspect's right to consult with a lawyer and to have an attorney present during the interrogation. See *Powell*, 559 US at 60; *Miranda* at 471. In reaching this conclusion, we fully acknowledge that there is a certain logic in the proposition that an unqualified general warning about a "right to an attorney" encompasses *all* facets of the right to counsel such that a broad warning before interrogation regarding the "right to an attorney" impliedly informs a suspect of the right to consult an attorney and to have an attorney present during the interrogation. See *Warren*, 642 F3d at 186-187; *Frankson*, 83 F3d at 82; *Walton*, 199 Ill App 3d at 344-345. But, in our view, this conclusion is disingenuous in light of *Miranda*'s mandate for clear and unambiguous warnings and it assumes—contrary to *Miranda*—that all suspects, regardless of their backgrounds, have a working knowledge of everything implied by a reference to their "right to an attorney."

In this regard, as noted, *Miranda* was focused on the right to counsel as a corollary to the right against compelled self-incrimination, i.e., the right to counsel that exists during custodial interrogation to "protect an accused's Fifth Amendment privilege in the face of interrogation." *Miranda*, 384 US at 471. This is a specific right, and it is this right to counsel in connection with custodial interrogation that must be overtly conveyed to a suspect under *Miranda*.[8] See *id*. In this context, basic temporal information is key to ensuring that a defendant understands what the right to counsel entails, i.e., that it applies before and during the interrogation as opposed to some future point. In contrast to decisions like *Frankson*, 83 F3d at 82, we are simply not persuaded

<hr>

various courts regarding the necessity of warning a suspect about the right to the presence of counsel during interrogation, it is not clear to us that *Miranda*'s discussion of the FBI practices compels the conclusion that advising a suspect of the right to counsel is sufficient to convey the right to the presence of counsel during an interrogation.

[8] In comparison to the right to counsel during custodial interrogation incident to the Fifth Amendment, the Sixth Amendment right to counsel attaches at, or after, the initiation of adversary judicial proceedings and it extends to all critical states of the proceedings. See *People v Buie*, 298 Mich App 50, 61; 825 NW2d 361 (2012); *People v Williams*, 244 Mich App 533, 538; 624 NW2d 575 (2001). Obviously, police do not have to provide suspects with a constitutional exegesis on the right to counsel. But for *Miranda* warnings to be meaningful, there needs to be an overt expression of the immediacy of the right to counsel—that it "exists before and during interrogation." 2 LaFave et al., Criminal Procedure (4th ed.), § 6.8(a), pp 886-887. See also *Noti*, 731 F2d at 615 ("The right to have counsel present during questioning is meaningful. Advisement of this right is not left to the option of the police . . . .").

by the conclusion that a reasonable person facing custodial interrogation, regardless of the person's background, would understand from a general reference to "right to an attorney" that this right includes the right to consult an attorney and to have an attorney present during the interrogation. Undoubtedly, such an inference can reasonably be drawn by individuals with a pre-existing understanding of the right to an attorney, including the fact that this right exists during custodial interrogation. But, "[c]onstitutional rights of an accused at the preliminary stage of the in-custody interrogation process is not commonplaced," and absent information regarding the immediacy of this right to counsel, the right to counsel could be "interpreted by an accused, in an atmosphere of pressure from the glare of the law enforcer and his authority, to refer to an impending trial or some time or event other than the moment the advice was given and the interrogation following."[9] *Atwell v United States*, 398 F2d 507, 510 (CA 5, 1968).

Rather than assume people are capable of inferring their constitutional rights, *Miranda* provides specific, clear-cut warnings that must be given regardless of "age, education, intelligence, or prior contact with authorities."[10] *Miranda*, 384 US at 468-469. With regard to the right to counsel, *Miranda* and its progeny categorically provide that, "as 'an absolute prerequisite to interrogation,'" "an individual held for questioning 'must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.'" *Powell*, 559 US at 60, quoting *Miranda* 384 US at 471. "Only through such a warning is there ascertainable assurance that the accused was aware of this right." *Miranda*, 384 US at 471-472. In the face of *Miranda*'s clear dictates, we fail to see how a warning lacking this essential information regarding the right to consult an attorney and have an attorney present during an interrogation can be considered adequate. See *Powell*, 559 US at 60, quoting *Miranda* 384 US at 471.

In this case, neither Stowinsky nor DesRosiers explained to defendant that she had the right to the presence of counsel. Although defendant was generally advised that she had a right to an attorney, this broad warning failed to reasonably convey to defendant that she could consult an attorney before she was questioned and during her interrogation. Because defendant was not adequately advised of her right to the presence of counsel, her subsequent statements are

---

[9] See also *Carlson*, 228 Ariz at 346 (discussing the fact that suspect was unaware "that he had a right to the presence of an attorney (as distinguished from mere eventual representation by an attorney), and that the right applied before, and continued during, any questioning"); *Roberts v State*, 874 So 2d 1225, 1226 (Fla Dist Ct App, 2004) (noting that suspect believed he could only have a lawyer "in the courtroom"). Indeed, even among cases concluding that general warnings may suffice, the courts have acknowledged that generality in the warnings may potentially lead to ambiguity, *Caldwell*, 954 F2d at 502, and that general warnings merely "imply" the right to counsel during the interrogation, *Walton*, 199 Ill App 3d at 344-345.

[10] "The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given." *Miranda*, 384 US at 468.

inadmissible at trial. *Miranda*, 384 US at 470; *Elliott*, 494 Mich at 301. Accordingly, the trial court did not err by granting defendant's motion to suppress statements.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly