*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACKIE LEE PITTMAN,

Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 341110
Macomb Circuit Court
LC No. 2016-004126-FH

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III). MCL 750.520d. We affirm.

## I. BACKGROUND

Defendant's convictions result from his sexual assault of his adopted daughter. The victim testified that, while boating with her family, she became severely sunburned. That night, defendant helped the victim apply aloe to her burns. According to the victim, while defendant was applying aloe to her back and legs, defendant digitally penetrated her vagina and anus, once each. The victim eventually reported the incident and defendant agreed to meet with Detective Brandon Wiley for an interview.

Detective Wiley began the interview by explaining that the victim alleged that defendant inserted his finger into her vagina and anus, to which defendant replied, "No." Detective Wiley then informed defendant that DNA was found in those locations and told defendant that this was his "opportunity to get it out there." At that point, defendant stated that he did not know if the penetrations had occurred because he was "almost asleep" at the time. Defendant continued, "Now if I slid my finger in there, okay, I did. You know, let's just go with that because I honest to God I do not remember." Detective Wiley questioned that defendant had to know if he inserted his finger somewhere, to which defendant replied that his finger had slipped into the victim's "butt cheek" and that he did not know whether his finger had slipped into the victim's vagina because he had "so much lotion" on him. Detective Wiley asked, "So you're saying it's possible that your—your finger could have went into her vagina?" Defendant replied, "Yeah."

Detective Wiley offered defendant three possible scenarios with people in defendant's situation. In the first scenario, the offender denied the allegations against him; in the second scenario, the offender said that he did not remember and the allegations may have happened; in the third scenario, the offender admitted to the allegations and apologized. Detective Wiley asked defendant, "Who do you think out of those three people are going to get the leniency from the court?" Defendant replied that the third person would receive leniency. Detective Wiley asked defendant which person he wanted to be and defendant said the third person.

Detective Wiley told defendant that defendant would be like the second person if Detective Wiley got his "DNA labs" back with defendant's DNA in the victim's vagina and anus. Defendant said that if his finger slipped, he was "extremely sorry." Defendant reiterated, "Okay. So again, I am super—if I—you know, okay, I'm admitting that I did it, all right? And I'm super apologizing for it." Detective Riley told defendant, "Well, we know it happened," to which defendant replied, "Yeah." Ultimately, defendant confessed to digitally penetrating the victim's vagina and anus:

*Detective Wiley*: Okay. How many times did you put it in her anus?

[*Defendant*]: Just the once.

*Detective Wiley*: Okay. How many times did you put it in her vagina?

[*Defendant*]: Just the once.

*Detective Wiley*: Just the once?

[*Defendant*]: Yeah.

*Detective Wiley*: Okay. She said it was twice. Are you sure it wasn't twice? Because she said —she was specific about two both times.

[*Defendant*]: No.

*Detective Wiley*: It was just once in the butt and once in the vagina?

[*Defendant*]: Yeah.

Defendant moved *in limine* to suppress evidence of the interview from trial, claiming that Detective Wiley's questioning rendered the confession involuntary. The trial court denied defendant's motion and defendant was ultimately convicted of two counts of CSC-III. This appeal followed.

## II. ANALYSIS

Defendant raises only one issue on appeal: that the trial court erred by denying his motion to suppress evidence of the interview. According to defendant, the totality of the circumstances indicates that Detective Wiley's coercive interview techniques overbore defendant's will, rendering his statement involuntary. "We review de novo a trial court's ultimate decision on a

motion to suppress." *People v Matthews*, 324 Mich App 416, 424; 922 NW2d 371 (2018) (internal citation and quotation marks omitted). The trial court's factual findings supporting its decision are reviewed for clear error. *Id*.

To be admissible as evidence in a criminal trial, the totality of the circumstances surrounding the making of the confession must indicate that it was freely and voluntarily made. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). The following factors are relevant when determining whether a statement was voluntarily:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*.]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness." *Id*. Ultimately, the relevant inquiry is whether "the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *Id*. at 333-334 (internal citation and quotation marks omitted). "The line of demarcation is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Id*. at 334 (internal citation and quotation marks omitted).

Here, defendant was not charged with a crime before he made his confession. Indeed, the record shows that defendant and Detective Wiley agreed upon a time for the interview and that defendant was free to leave the interview at any time. The interview was short, lasting only an hour, and defendant has not claimed any impairment that would affect his cognitive functioning. Defendant argues that he was "older," "clearly unsophisticated," and had no prior contact with law enforcement. Yet, there is no indication in the record that these factors prevented defendant from providing accurate answers. Defendant contends that his statements were not voluntary because he was "nervous" during the interview, but, on a video recording of the interview, defendant appeared to be "completely at ease."

Defendant argues that Detective Wiley overbore his will by promising him leniency. We disagree. Detective Wiley did ask defendant whether he would expect the trial court to be more lenient with a dishonest offender or a truthful offender, but Detective Wiley made no suggestion of leniency in this particular case. Detective Wiley did not threaten defendant with a lengthy sentence, did not purport to have any influence on the trial court's sentencing discretion, and did not offer any opinion on how this particular case would be resolved. As a whole, Detective Wiley's questions appear to be an attempt to express the gravamen of the situation and the importance of truthfulness. We emphasize that, at this point in the investigation, defendant was not in custody, was free to leave, and had not been charged with any crime. Under these

conditions, we are unable to conclude that Detective Wiley's questions about leniency overbore defendant's will.

Finally, defendant points out that Detective Wiley lied about the number of penetrations and the availability of DNA evidence. The fact that Detective Wiley misrepresented the victim's statement, however, is insufficient to make an otherwise voluntary confession inadmissible. *Frazier v Cupp*, 394 US 731, 739; 89 S Ct 1420; 22 L Ed 684 (1969). Defendant agreed to the interview, was not threatened in any way, and has not shown any impairment that would render him unable to accurately respond to questioning. Accordingly, we conclude that defendant's statement was freely and voluntarily given. The trial court did not err by admitting defendant's confession as evidence.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher

-4-