*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHNNIE LEE BROWN, III,

        Defendant-Appellant.

UNPUBLISHED
September 26, 2019

No. 343237
Iron Circuit Court
LC No. 17-002316-FC

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Johnnie Lee Brown, III, conceded to discharging his handgun at a person, striking his face and resulting in death. Throughout trial, defendant argued that he did so out of a fear for his life. To the contrary, the prosecutor contended that the shooting had resulted from a robbery gone awry. After hearing the evidence, the jury was persuaded by the prosecutor's position. On appeal, defendant raises several claims of error, none of which have merit.

## I. BACKGROUND

Defendant appeals by right his convictions for second-degree murder, MCL 750.317, and carrying or possessing a firearm when committing or attempting to commit a felony ("felony-firearm"), MCL 750.227b. Defendant's convictions followed from a shooting that occurred on the evening of April 13, 2016, outside his mother's house. Three individuals, defendant, Nicholas Vasquez, and Nicholas Kissling, met at a neighbor's house and agreed to commit a robbery. Vasquez and Kissling faced their own charges and were involved in separate proceedings. The victim was Ja'Mall Kitchens.

Defendant was 19 years old at the time of the incident. Defendant disputed that he agreed to commit a robbery, but Vasquez and Kissling both testified that it was defendant's idea to commit the robbery. Despite defendant's mother having obtained a personal protection order ("PPO") against defendant only the day prior, of which defendant was aware, the three went to her house at approximately 10:00 p.m. Defendant knocked on the door but received no answer. The three remained on the porch and smoked marijuana. Defendant claimed that he had spontaneously decided to visit his mother, but Vasquez and Kissling testified that the three went

-1-

there to discuss and carry out a robbery. Vasquez explained that the plan was to carry out a robbery by defendant's mother's house.

There were differing accounts at trial for what transpired next. At some point, the victim appeared across the street, prompting defendant, Vasquez, and Kissling to leave the porch and walk toward him. Defendant claimed they were merely heading in the same direction as the victim and not specifically toward him. Defendant and the victim exchanged words from a distance, and, according to Vasquez, defendant argued with the victim. Defendant then shot the victim, striking his face, and the victim died shortly thereafter. Defendant and the others fled the scene, and Vasquez asked defendant, "Why did you shoot him. We didn't get to run his pockets yet."

The case lingered without any leads for several months. Eventually, the police identified defendant as a suspect and arrested him. During his interrogation, he confessed to shooting the victim but claimed that he did so because he believed the victim had a firearm and was about to shoot him. These statements were admitted into evidence over defendant's objections and after a hearing held pursuant to the procedures outlined in *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965). The trial court found that defendant's statements were voluntarily made and without police coercion. At trial, the jury was unpersuaded by defendant's self-defense theory and convicted him of all counts. The trial court sentenced defendant to serve 30 to 60 years in prison for the second-degree murder conviction and two years for the felony-firearm conviction.

This appeal followed.

## II. ANALYSIS

### A. INVOLUNTARY CONFESSION

Defendant first challenges the voluntariness of his statements made to police during his interrogation. He claims that his statements were the result of police pressure, his young age, his mental health issues, and his being under the influence of marijuana. We review de novo the voluntariness of a confession and the trial court's factual findings for clear error. *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012). Additionally, we review de novo a trial court's decision on a motion to suppress and the trial court's factual findings on the motion for clear error. *People v Matthews*, 324 Mich App 416, 424; 922 NW2d 371 (2018).

A confession must be voluntary, meaning "the confession is the product of an essentially free and unconstrained choice by its maker." *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988) (cleaned up). Our Supreme Court previously set forth factors that should be considered:

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any

advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness." *Id*. The totality of the circumstances must show that the confession was voluntary. *Id*.

A critical component to the analysis is whether there was coercive police conduct. As the United States Supreme Court explained, "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v Connelly*, 479 US 157, 164; 107 S Ct 515; 93 L Ed 2d 473 (1986). The Court explained that although "each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct." *Id*. at 163-164. Additionally, while "courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus," this "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " *Id*. at 164.

At the *Walker* hearing, defendant noted his young age and eighth-grade education level. Defendant claimed that he had been previously diagnosed with ADHD, ADD, bipolar disorder, and autism. According to defendant, police never inquired about his age or mental health. Defendant also claimed that the police engaged in pressure tactics during the interrogation. He alleged that the interviewing detective, Detective Keith Stratton, leaned in, gripped defendant's leg, gave defendant a "hard staring," and discussed defendant's religious beliefs. Defendant stated that the grip did not cause pain. He acknowledged that Detective Stratton neither raised his voice nor threatened him. Defendant further claimed that he had smoked marijuana immediately prior to his arrest and was still under its influence during the interview. According to defendant, police did not inquire into whether he was under the influence of any substance or whether he had prior mental-health issues. Defendant acknowledged that he never volunteered this information to police.

Defendant rests much of his argument on his assertion that he was under the influence of marijuana at the time of the interrogation. Detective Stratton, who had been trained to identify the aroma of marijuana, did not smell marijuana on defendant's person during the interrogation. Furthermore, defendant exhibited no signs of intoxication and was clear and concise in his answers. Detective Stratton observed nothing to prompt him to ask whether defendant was under the influence of any substance or had mental health issues. Although defendant may disagree with this testimony, the trial court evidently found Detective Stratton's testimony more credible, and we defer to the trial court's decision on such matters. See *Ryan*, 295 Mich App at 396.

Detective Stratton acknowledged that he placed his hand on defendant's leg and leaned in, but he explained that this was done out of empathy and not in a forceful or aggressive

manner. Review of the video confirms this account. The detective had earlier spoken with defendant's father and "knew him to be a pastor and I thought . . . something that we both understood in that room and that was just being a good human being, a good Christian." Detective Stratton testified that he merely had encouraged defendant to be honest and tell the truth during the interrogation. Detective Stratton explained that defendant exhibited no signs of uncomfortableness.

Defendant merely presented his own testimony; no other evidence supported his allegations that he was under the influence of marijuana or had prior mental-health issues inhibiting his ability to give voluntary statements. While it is true that cognitive deficiencies remain a factor for trial courts to examine, there is no evidence here to show that Detective Stratton exploited a mental deficiency or that defendant's cognitive impairments (if any) were so severe such that Detective Stratton should have known that defendant was incapable of understanding. See *People v Cheatham*, 453 Mich 1, 21 n 18; 551 NW2d 355 (1996). Defendant merely pointed to his age and education level generally and without elaboration or support, and he acknowledged that, at the time of the interview, he was not on medication for his claimed conditions and had not been for a long period of time.

Defendant's arguments ignore substantial evidence that supported the trial court's determination that his statements were voluntary. Defendant has failed to show direct evidence of police coercion or conduct resembling coercion. Without such a causal connection, defendant cannot claim that he was deprived of due process of law. See *Connelly*, 479 US at 164. Furthermore, we discern no clear error in the trial court's factual determinations regarding the *Cipriano* factors. Detective Stratton's testimony supported the finding that defendant's statements were voluntarily made. Accordingly, we reject defendant's first claim on appeal.

B. *MIRANDA* WARNINGS

Defendant also argues that the warnings he received pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were insufficient, making any incriminating statements inadmissible. This issue is unpreserved because defendant failed to raise it in the trial court. See *People v Calloway*, 169 Mich App 810, 818; 427 NW2d 194 (1988), vacated on other grounds 432 Mich 904 (1989). In any event, we have reviewed the video interview between defendant and Detective Stratton. Detective Stratton clearly gave defendant sufficient *Miranda* warnings, and defendant acknowledged at the *Walker* hearing that he received these warnings. The claim is without merit.

C. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his felony-firearm conviction. He claims that the felony-firearm was predicated on larceny but that there was insufficient evidence to show that he committed or attempted to commit larceny. We review de novo a claim of insufficient evidence. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). All "factual conflicts are to be viewed in a light favorable to the prosecution." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). The appellate court must "view the evidence in a light most favorable to the prosecution and

determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*.

Felony-firearm, contained within MCL 750.227b(1), provides in pertinent part:

A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years.

Larceny is a common-law offense with the following elements: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). An attempt is "(1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001). See also MCL 750.92. An attempt involves more than mere preparation. *Thousand*, 465 Mich at 164.

Although felony-firearm requires the presence of an underlying felony offense, the jury need not actually convict a defendant of that underlying offense. *People v Lewis*, 415 Mich 443, 454-455; 330 NW2d 16 (1982). This seemingly inconsistent verdict is permitted because a jury has the power to find beyond reasonable doubt that a defendant committed an offense but nonetheless choose to extend leniency and not convict for that offense. *Id*. at 450-452.

Contrary to defendant's arguments on appeal, there was ample evidence to support a finding of attempted larceny as a predicate for the felony-firearm conviction. Both Vasquez and Kissling testified that the three discussed carrying out a robbery and that it was defendant's idea to commit a robbery. Kissling testified that this plan was in place at the time defendant shot the victim. Vasquez testified that the three planned for the robbery to occur near the house of defendant's mother and that the three waited between 30 minutes and one hour before the victim appeared across the street. Kissling testified that, once they observed the victim, the three began walking toward the victim. After the shooting, Vasquez asked defendant, "Why did you shoot him. We didn't get to run his pockets yet."

Accordingly, there was evidence demonstrating that defendant, Vasquez, and Kissling formed an agreement to deprive a victim of his personal property with the intent to steal property. See *March*, 499 Mich at 401. There was evidence demonstrating that defendant, Vasquez, and Kissling took several acts toward committing larceny by agreeing to commit the crime around the house of defendant's mother, lying in wait for a victim, and moving to approach the victim once they observed him. These acts went beyond mere preparation. See *Thousand*, 465 Mich at 164. Therefore, defendant was properly convicted of felony-firearm predicated on attempted larceny.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant finally argues that his trial counsel was ineffective for failing to object to three separate pieces of testimony. Defendant contends that this evidence prejudiced him and should have been excluded. We first note that because defendant failed to move for a new trial or

-5-

hearing based on *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), our review is limited to those mistakes visible on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (cleaned up), and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (cleaned up). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Furthermore, examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions came from "sound trial strategy," *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). We must not "substitute our judgment for that of counsel on matters of trial strategy." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defendant challenges three pieces of testimony: (1) testimony about items going missing in a witness's house; (2) testimony regarding the PPO that defendant's mother took out against him; and (3) testimony concerning a prior robbery and shooting that defendant was involved in. Regarding the missing items, the witness merely testified that a few items had gone missing from her house and that she suspected defendant and his friends were to blame. Only "little things" had gone missing, and she referred to defendant and his friend's potential actions as "dumb kid things." Although perhaps defendant's trial counsel could have objected to this testimony, doing so could have unnecessarily drawn the jury's attention to these other instances instead of to defendant's theory, i.e., he feared for his life at the time he shot the victim. Moreover, the testimony was not as damaging as defendant claims on appeal. The witness briefly testified that she merely suspected the three men, that the items were small, and that she was unaware of any criminal activity. The presumption is that defense counsel's actions resulted from acceptable trial strategy, *Trakhtenberg*, 493 Mich at 52, and defendant has failed to rebut the presumption, *Seals*, 285 Mich App at 17.

Regarding the PPO, this was relevant to the prosecutor's case because she used it to show that defendant was not merely visiting his mother's house on the night of the shooting. On that night, defendant *knew* that the PPO had been served on him the day prior and that it legally prevented him from visiting his mother's house or possessing a firearm. With this knowledge, defendant had no lawful reason to visit his mother at 10:00 p.m. with a firearm a single day after receiving the PPO, and the prosecutor attempted to persuade the jury on this point. The prosecutor used the PPO in her efforts to show that defendant, Kissling, and Vasquez went to the house not to visit or smoke marijuana but to carry out a robbery. Accordingly, this evidence was relevant, and defense counsel had no duty to make a meritless or futile objection. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Finally, the prior robbery and shooting were relevant because it related to defendant's claim that he knew the victim and that this fueled his fear for his life. The prosecutor questioned

defendant about how he knew the victim, and defendant explained that he knew the victim from a prior case, which involved a robbery and shooting. The specifics of the robbery and shooting are unclear from the record before us. The testimony presented at trial merely demonstrated that a prior case involving a robbery and shooting occurred, that defendant was a witness and brought to court to testify but ultimately was never called to do so, and that the victim from the present case was in the courtroom in that prior case. There was no indication that defendant was a perpetrator in that prior case. Rather, the perpetrator in the case was a friend of the victim, and the jury heard this.

The challenged testimony was procured because defendant claimed that he knew it was the victim on the night of the shooting and that this knowledge fueled his fear and decision to shoot the victim. Defendant contended that he feared reprisal from the victim due to defendant's involvement in the prior case against the victim's friend. The prosecutor doubted whether defendant knew who the victim was at the time of the shooting, and she therefore questioned defendant to determine how he knew the victim and to what extent. Defendant voluntarily offered the testimony concerning the prior case and his involvement with it. Accordingly, given that this testimony related to a part of defendant's theory, it was relevant, and there is no indication that the testimony was harmful given that defendant was not the perpetrator but merely a witness in that prior case. Again, counsel need not make a meritless or futile objection. *Putman*, 309 Mich App at 245. Therefore, defendant has failed to show that his trial counsel's actions fell below an objective standard of reasonableness. *Strickland*, 466 US at 688, 694.

Moreover, defendant's claim would independently fail because he cannot show prejudice. There was ample evidence for the jury to find defendant guilty of the shooting. It is incumbent upon defendant to show how the result would have been different "but for" his trial counsel's actions. See *id*. Defendant has failed to demonstrate how these three pieces of testimony outweighed the eyewitness testimony and defendant's own testimony. This was not a case in which defendant denied the shooting; his credibility was not relevant in that regard. The question before the jury was whether the shooting occurred in self-defense or during a robbery gone wrong, and there was ample independent evidence of defendant's guilt.

Affirmed.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly