UNITED STATES of America,
Plaintiff–Appellee,

v.

Derrick Myran FRANKSON, Defendant–Appellant (Two Cases).

Nos. 95–5358, 95–5386.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1996.

Decided April 29, 1996.

**80**

Before WILKINSON, Chief Judge, and
HALL and WILKINS, Circuit Judges.

**ARGUED:** Janis Ruth Harvey, Law Offices of Janis R. Harvey, Baltimore, Maryland; Gil S. Amaral, Walker & VanBavel, P.A., Baltimore, Maryland, for Appellant. Philip S. Jackson, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Roland Walker, Walker & VanBavel, P.A., Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

## OPINION

WILKINSON, Chief Judge:

Appellant Derrick Myran Frankson challenges his convictions for drug trafficking under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Frankson contends that his *Miranda* warnings were too general, that he never formally waived his *Miranda* rights, and that *Miranda* requires police to readvise suspects of their rights when the interrogation does not follow immediately upon the warnings. Finding no merit in these contentions, we affirm the admission into evidence of appellant's statements as well as his convictions for possession with intent to distribute cocaine and marijuana.

### I.

On April 21, 1994, police officers attempted, pursuant to a search warrant, to enter a Baltimore apartment occupied solely by Frankson. After the police identified themselves, Frankson refused to let them inside. The police then proceeded to force the door open with a hammer. Frankson sought to frustrate this effort by pushing on the door with his body. When the police finally forced their way inside, Frankson ran toward a hidden .25 caliber pistol, only to be tackled by the pursuing officers just short of the weapon.

After handcuffing Frankson and searching his person, Sergeant Fred Bealefeld read Frankson his rights. At the suppression hearing, Bealefeld, whose testimony the district court credited, recounted what transpired between Frankson and himself:

I said I am Sergeant Bealefeld from the Baltimore City Police Department, we

have a search and seizure warrant for this apartment. Now I want to advise you of your rights. First of all, you have the right to remain silent. Anything you say, do, or write can and will be used against you. You have the right to an attorney. If you can't afford an attorney, the Government will get one for you. I also explained to him he could answer some of my questions, all of my questions, or none of my questions. I also told him that while he was talking to me, he was free to stop talking to me at any time. I asked him if he understood that. He indicated that he did by answering yes.

As a result of the ensuing search, a loaded .25 caliber handgun was recovered under the cushion of a chair toward which Frankson had been running before he was tackled. Police also found a .45 caliber semi-automatic handgun near loaded ammunition magazines, 400 grams of cocaine, four kilograms of marijuana, more than $500 in cash, and various drug trade paraphernalia including two scales. When the search concluded, Frankson was transported to the local Drug Enforcement Agency for booking.

Two and a half hours after Frankson's arrest, Sergeant Bealefeld explained to Frankson that the police had recovered substantial evidence. Frankson then admitted that the "stuff" in the apartment belonged to him and explained how he had obtained his drug shipments. Frankson later denied making these statements. Moreover, Frankson alleged police brutality as well as threats of deportation and imprisonment.

Frankson was indicted for: (1) possessing cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); (2) possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1); and (3) using and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Defense counsel then filed a motion to suppress Frankson's statements to police on the ground that those statements were involuntary. The district court held an evidentiary hearing and concluded that Frankson had, in fact, received his *Miranda* warnings and that his statements were voluntary. On March 14, 1995, the jury returned verdicts of guilty on all counts, and the dis-

trict court sentenced Frankson to 111 months incarceration and three years of supervised release. Frankson now appeals.

## II.

### A.

Frankson's first contention is that Sergeant Bealefeld did not adequately inform him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the Supreme Court explained that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444, 86 S.Ct. at 1612. Frankson contends that Bealefeld's warning failed to satisfy *Miranda* because it did not convey that: "(1) anything Mr. Frankson said in response to Sergeant Bealefeld's questions could be used against him *in court;* (2) Mr. Frankson had the right to confer with counsel *prior to the interrogation,* and; (3) Mr. Frankson had the right to have counsel present *during the interrogation.*" (emphasis added). In essence, Frankson argues that Bealefeld's charge was not specific enough to satisfy the requirements set forth in *Miranda* .

■ The Supreme Court, however, "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981). "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures. The Court in that case stated that '[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant.'" *Id.* (emphasis in original) (quoting *Miranda*, 384 U.S. at 476, 86 S.Ct. at 1629). Thus, satisfaction of *Miranda* does not turn on the precise formulation of the warnings, but rather, on whether the "warnings reasonably 'convey to [a suspect] his rights.'" *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875, 2880,

106 L.Ed.2d 166 (1989) (quoting *Prysock,* 453 U.S. at 361, 101 S.Ct. at 2810).

■ Bealefeld's first warning did just that when he stated: "[a]nything you say, do, or write can and will be used against you." It is not critical that Sergeant Bealefeld failed to state that Frankson's statements could be used against him at a particular location, *in court.* Bealefeld's instruction unequivocally conveyed that *all* of Frankson's statements could be used against him anytime, anywhere, including a court of law, a broader warning than *Miranda* actually requires. As Bealefeld's general warning reasonably conveyed that Frankson's statements could be used against him anywhere, including court, it sufficed to fulfill the requirements of *Miranda. Id.* at 203, 109 S.Ct. at 2880.

■ Frankson also criticizes Bealefeld's second instruction—"[y]ou have the right to an attorney. If you cannot afford an attorney, the Government will get one for you"—for not specifically mentioning that the right to an attorney applies both "prior to interrogation" and "during the interrogation." Once again, however, Bealefeld's statement was clear in its inclusion of these circumstances. It communicated to Frankson that his right to an attorney began immediately and continued forward in time without qualification. The Eighth Circuit, in *United States v. Caldwell,* upheld a nearly identical instruction—"[y]ou have a right for an attorney"—when it was attacked for being too general. That court explained that "[w]hen the only claimed deficiency is that of generality ... we cannot hold the warning ... amounts to plain error." 954 F.2d 496, 502 (8th Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).

■ *Miranda* and its progeny simply do not require that police officers provide highly particularized warnings. Such a requirement would pose an onerous burden on police officers to accurately list all possible circumstances in which *Miranda* rights might apply. Given the common sense understanding that an unqualified statement lacks qualifications, all that police officers need do is convey the general rights enumerated in *Miranda.* Because Sergeant Bealefeld suc-

ceeded in doing so here, we cannot say that his *Miranda* warnings were erroneous.

### B.

■ Appellant next avers that even if the warnings were sufficient under *Miranda,* he never formally waived his constitutional rights. Frankson need not, however, have uttered any particular words for waiver to occur. The Supreme Court has explained that "[t]he question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *see also United States v. Hicks,* 748 F.2d 854, 859 (4th Cir. 1984). Thus, a defendant's "subsequent willingness to answer questions after acknowledging [his] *Miranda* rights is sufficient to constitute an implied waiver." *United States v. Velasquez,* 626 F.2d 314, 320 (3rd Cir. 1980); *see also Cape v. Francis,* 741 F.2d 1287, 1298 (11th Cir.1984), *cert. denied,* 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985); *United States v. Stark,* 609 F.2d 271 (6th Cir.1979).

Frankson demonstrated such a willingness here. After Frankson was read his rights, Officer Bealefeld "asked him if he understood [those rights], [and he] indicated that he did by answering yes." Immediately afterward, Frankson answered at least three questions posed by Sergeant Bealefeld. And two and one-half hours later, at the DEA office, Frankson cooperated extensively with Bealefeld. According to Sergeant Bealefeld, Frankson admitted that "no one else stays [in the apartment], the stuff is mine." Frankson even explained how he used unsuspecting homeowners to insulate himself from arrest. Frankson would find a house where no one was ordinarily home during the day, forward the address to his drug supplier, and instruct his supplier to send the drugs via UPS to that home. On the day of expected delivery, Frankson would simply wait until the delivery person left his package on the home's doorstep. When the UPS truck departed, Frankson retrieved his narcotics and left. Even though Frankson never "formally" waived his rights, such cooperation, when

coupled with his acknowledgment of his *Miranda* rights, constituted a valid waiver. *Velasquez*, 626 F.2d at 320.

### C.

 Finally, Frankson contends that *Miranda* requires the police to readvise suspects of their rights when the interrogation does not immediately follow the *Miranda* warning or when there is a delay in the interrogation. In particular, appellant objects to the two and one-half hours that elapsed between Frankson's *Miranda* warnings and the point at which he began to confess his involvement with narcotics at the DEA office. The mere passage of time, however, does not compromise a *Miranda* warning. Courts have consistently upheld the integrity of *Miranda* warnings even in cases where "several hours" have elapsed between the reading of the warning and the interrogation. *United States v. Diaz*, 814 F.2d 454, 461 (7th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987) ("several" hours between warning and cooperation is acceptable); *Jarrell v. Balkcom*, 735 F.2d 1242 (11th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985) (three hours between warning and cooperation is acceptable); *United States ex rel. Henne v. Fike*, 563 F.2d 809, 814 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978) (nine hours between warning and cooperation is acceptable); *United States v. Osterburg*, 423 F.2d 704 (9th Cir.), *cert. denied*, 399 U.S. 914, 90 S.Ct. 2216, 26 L.Ed.2d 571 (1970) (one hour and fifteen minutes between warning and cooperation is acceptable). We too believe that Frankson's initial *Miranda* warning was in no way compromised by the passage of two and one-half hours between the issuance of his warning and the point at which he began to confess his crimes and cooperate with the police.

### III.

 Frankson also contends that his mere presence in an apartment with narcotics and distribution paraphernalia was insufficient to convict him of possession with intent to distribute illegal drugs. Frankson, however, confessed that he was the only person who stayed in the apartment and that the drugs were his. When this confession is combined with the large volume of drugs, the scales and other indicia of distribution, the presence of his personal papers, the registration of the apartment's utilities in his name, and his attempts to thwart the police search, the evidence is more than sufficient to support his distribution convictions.

### IV.

For the foregoing reasons we affirm Frankson's convictions for possession with intent to distribute controlled substances. In view of the government's motion to set aside Frankson's conviction under 18 U.S.C. § 924(c) in light of *Bailey v. United States*, — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), we reverse that count and remand for resentencing on the two controlled substance convictions.

*AFFIRMED IN PART, REVERSED AND REMANDED IN PART.*