**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4603**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CARLTON TYRONE NASH,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Timothy M. Cain, District Judge.  (6:16-cr-00284-TMC-1)

Submitted:  May 11, 2018                                           Decided:  June 29, 2018

Before GREGORY, Chief Judge, and DUNCAN and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Emily Deck Harrill, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Beth Drake, United States Attorney, Columbia, South Carolina, A. Lance Crick, First Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal grand jury indicted Carlton Tyrone Nash of violating 18 U.S.C. § 922(g)(1), which prohibits a convicted felon from possessing a firearm. At trial, the government proffered a recorded conversation between Nash and Special Agent Jared Wingler, in which Nash confessed to possessing a firearm during an attempted theft. Nash moved to suppress the confession, arguing that Wingler did not properly inform him of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). The district court denied Nash's motion, and a jury convicted him. On appeal, Nash challenges the denial of his suppression motion. For the reasons that follow, we affirm the district court.

I.

Nash is a convicted felon with a long criminal history. On March 22, 2016, Nash broke into a residence and threatened Keeaira Pitts, Michael Robinson, and Cortlin Turmon with a Galesi .25 caliber pistol. Although Nash was wearing a Hillary Clinton mask when he first entered the residence, the mask fell off during the incident. Pitts, Robinson, and Turmon recognized Nash from previous interactions. After a brief physical struggle, Nash fled the crime scene.

When law enforcement arrived at the crime scene, they recovered the pistol and found blood samples on the Hillary Clinton mask that matched DNA obtained from Nash. Nash was arrested and charged with several state crimes.

Additionally, the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") sought to charge Nash with being a felon in possession of a firearm. On April

11, 2016, ATF Special Agents Jared Wingler and Rob Horne transported Nash from the Greenville County Detention Center to federal court for an initial appearance. When Wingler and Horne arrived at the detention center, Nash began asking questions about the nature of the charge against him. Wingler told Nash to hold his questions until they got to Horne's vehicle.

Once in the vehicle, Wingler told Nash, "you know you have the right to remain silent. Anything you say can be used against you in court. You have the right to an attorney. If you can't afford to hire one, one can be provided for you. You understand all that?" J.A. 454. Nash replied, "Yes, sir," and Wingler continued, stating "You don't have to talk to us. You can, you know, stop answering questions anytime you want to." *Id.* According to Wingler, Nash communicated in a clear and cogent manner, Wingler had no problem understanding Nash, and Nash seemed to have no problem understanding Wingler.

Roughly two minutes later, Wingler asked Nash where he got the gun used in the March 22 burglary, and Nash replied, "I got it from Jack Davis." J.A. 456. Wingler then told Nash that Nash would meet a federal defender, who would explain the warrant and court process, once they arrived at the federal courthouse.

## II.

On April 13, 2016, Nash was indicted in the District of South Carolina, Greenville Division, for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

3

Before trial, Nash filed a motion to suppress the statement in which he admitted that he had acquired the gun from Jack Davis and used it in the March 22 burglary. Nash contended that the statement to Wingler was obtained in violation of his Fifth and Sixth Amendment rights. Specifically, Nash argued that Wingler did not properly *Mirandize* him because Wingler failed to inform Nash that Nash had the right to have an attorney present *before and during* the interrogation. The district court denied the motion.

Nash was convicted. This appeal timely followed.

### III.

On appeal, Nash contends that the district court erred in denying his motion to suppress because Wingler did not properly advise him of his right to consult with an attorney both prior to and during questioning. Whether Wingler's warning complied with *Miranda* is a question of law that we review de novo. *See United States v. Dire*, 680 F.3d 446, 473 (4th Cir. 2012). For the reasons that follow, we affirm the district court.

Confessions made during custodial interrogations will be suppressed "unless police advise the defendant of his rights under *Miranda*, and the defendant knowingly, intelligently, and voluntarily waives those rights."[*] *United States v. Giddins,* 858 F.3d 870, 879 (4th Cir. 2017) (quoting *United States v. Holmes,* 670 F.3d 586, 591 (4th Cir. 2012)). Prior to questioning, an individual taken into custody must be warned that "he

---

[*] Nash's only argument on appeal is that he was not properly *Mirandized.* He raises no separate argument concerning his inability to "knowingly, intelligently, and voluntarily" waive his Fifth and Sixth Amendment rights.

has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him." *Miranda*, 384 U.S. at 479. An individual's right to an attorney includes the right to consult with an attorney prior to questioning and the right to have an attorney present during interrogation. *Id.* at 471.

Although law enforcement officers must advise defendants taken into custody of all four rights, officers need not recite the warnings according to any specific formula. *See Florida v. Powell,* 559 U.S. 50, 60 (2010) ("[T]his Court has not dictated the words in which the essential information must be conveyed."). Instead, officers must provide "the now familiar *Miranda* warnings. . . *or their equivalent*." *California v. Prysock,* 453 U.S. 355, 360 (1981) (emphasis in original) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 297 (1980)). Thus, the question before us is whether the warnings that Nash received "reasonably 'conve[yed] to [Nash] his rights as required by *Miranda*.'" *Powell*, 559 U.S. at 60 (quoting *Duckworth v. Eagan,* 492 U.S. 195, 203 (1989)). Precedent compels us to hold that they did.

In *United States v. Frankson*, 83 F.3d 79 (4th Cir. 1996), we held that a law enforcement officer properly advised a defendant of his right to an attorney with the phrase "[Y]ou have the right to an attorney," *id.* at 81, without specifically advising the defendant that he had a right to an attorney both prior to and during interrogation, *id.* at 82. The court explained that the law enforcement officer's statement communicated to the defendant that his right to an attorney began immediately and that such a warning complied with *Miranda* and its progeny, which "simply do not require that police officers

5

provide highly particularized warnings." *Id.* "[A]ll that police officers need to do is convey the general rights enumerated in *Miranda*." *Id.* As Wingler's warning to Nash, advising him "you have a right to an attorney" is virtually identical to that warning given in *Frankson*, *Frankson* controls unless abrogated by an en banc review or overturned or limited by the Supreme Court. Therefore, the phrase "you have a right to an attorney," under these circumstances, sufficiently advised Nash of his general right to consult with an attorney before and during the interrogation.

Nash argues that *Frankson* is undermined by the Supreme Court's decision in *Powell*. Specifically, Nash contends that *Powell*'s holding requires police officers to expressly inform a defendant of his right to counsel during questioning. We disagree. *Powell* held that warnings that the defendant had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview," taken together, conveyed the defendant's right to an attorney before and during interrogation. *Powell,* 559 U.S. at 62. Thus, *Powell* stated only what is sufficient to satisfy the requirements of *Miranda*, not what is necessary. In fact, as previously stated, the Supreme Court has repeatedly and plainly held that no specific language is required to satisfy *Miranda*. *See id.* at 60; *see also Duckworth,* 492 U.S. at 203 (holding that the court "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement") (quoting *Prysock*, 453 U.S. at 361); *Prysock,* 453 U.S. at 359 ("*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

IV.

Because ATF agents properly advised Nash of his right to an attorney under *Miranda*, we hold that the district court properly denied Nash's motion to suppress. Accordingly, the district court's judgment is

*AFFIRMED*.