Filed 8/1/23  P. v. Topete CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077965 |
| v. | (Super. Ct. No. RIF2001165) |
| DANIEL TOPETE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.  Affirmed.

Spolin Law and Aaron Spolin, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

A jury convicted defendant and appellant Daniel Topete of various offenses for sexually abusing his minor niece, Jane Doe. The trial court sentenced him to an indeterminate term of 110 years to life plus a determinate term of 10 years. He contends the judgment must be reversed because the trial court erred in admitting his statements to law enforcement at trial in violation of his *Miranda*[1] rights, and the court erred in refusing to admit an hours-long video recording of his interview by law enforcement. We find no error and affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Doe's father works from 7:00 p.m. until 4:00 a.m. From the time she was in pre-kindergarten until she was in fourth grade, Doe would spend the night at defendant's house and his wife, Josefina (Josie), would take her to school in the morning. Doe slept on a mattress on the floor of defendant and Josie's room.

When Doe was in fourth grade, defendant drove her to a Home Depot in his van. They parked in the parking lot and defendant got into the back seat with her. Defendant

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2] Our recitation of the facts and trial court proceedings is truncated given our resolution of the two issues defendant raises, which concern his interview with investigators.

2

began sodomizing her, but she told him to stop.  He stopped, and they left to go back to his house.

When they returned, Jane Doe told Josie and her cousin what defendant had done. Later that night, Doe texted a friend, B., and told her what happened.  B.'s mother, J.H., saw the text and called Doe.  Doe told J.H. that defendant molested her.  J.H. reported the abuse to Doe's school, deputies at the school, and officers at the Moreno Valley Police Department.  When law enforcement spoke to Doe the next day, she was told not to say anything and that she did not want to get anyone in trouble.

Doe later spoke with a child forensic interviewer.  She reported that defendant began molesting her in the first grade.  Defendant molested her multiple times between then and the Home Depot incident, the last time defendant abused her.  Defendant's abuse included fondling her breasts, kissing her with his tongue, licking her genitals and anus, forcing her to orally cupulate him, and penetrating her vagina and anus with his fingers and penis.  Doe also said that defendant would watch pornography on his phone and told her he would "do that to her" when she was older.

Riverside County Sheriff's Department Investigators Carlos Topete (no relation to defendant) and John Tometich later interviewed defendant for two to four hours.[3] Defendant repeatedly denied molesting Doe, but admitted that he had recently been alone

---

[3] The parties disputed below the length of the interview.  Defendant claimed it was about two hours long while the prosecutor claimed it was upwards of four hours long.  Neither party introduced a video recording or transcript of the interview, so it is not in the record on appeal.

with her at a Home Depot parking lot. He said they went to buy fruit from a vendor outside the store and were there for only five to 10 minutes. The officers told defendant video surveillance footage from the store showed there was no fruit vendor and that his van was parked for about 18 minutes. Defendant said he did not know why he lied about buying fruit and that he was making calls while parked. The investigators then told defendant that cell phone records revealed that he did not make any calls during that time, and he responded that he was waiting to get reception and was using YouTube on his phone. Later on in the interview, defendant told the investigators that the mattress Doe slept on in his room had recently been thrown away.

A jury convicted defendant of three counts of lewd acts on a child under the age of 14 (counts 1-3; Pen. Code, § 288, subd. (a))[4]; one count of sexual penetration with a child 10 years of age or younger (count 4; § 288.7, subd. (b)); three counts of oral copulation with a child 10 years of age or younger (counts 5-7; § 288.7, subd. (b)); one count of sexual intercourse with a child 10 years of age or younger (count 8; § 288.7, subd. (a)); and one count of sodomy with a child 10 years of age or younger (count 9; § 288.7, subd. (b)). The trial court sentenced defendant to indeterminate terms of 15 years to life for counts 4 through 7, indeterminate terms of 25 years to life for counts 8 and 9, a term of six years on count 1, and consecutive two-year terms on counts 2 and 3.

---

[4] Unless otherwise indicated, all further statutory references are to the Penal Code.

4

DISCUSSION

Defendant argues his statements to Investigators Topete and Tometich should have been excluded at trial because they were obtained in violation of his *Miranda* rights and the trial court erroneously excluded the entire video of his interview with the Investigators. We disagree.

A. *Admission of Defendant's Statements to the Investigators*

1. *Background*

Defendant moved in limine before trial to exclude all of his statements to Investigators Topete and Tometich after they gave him a *Miranda* advisement on the ground that they did not properly advise him of his *Miranda* rights because of an "issue of Spanish to English translation."[5]

Neither party sought to admit a video recording or transcript of defendant's interview with the Investigators, but Investigator Topete testified at a hearing on the motion.[6] Investigator Topete explained that he is fluent in Spanish and English and was asked to sit in on defendant's interview in case he was needed to translate for defendant.

---

[5] Defendant also moved to exclude the statements he made to law before the Investigators' *Miranda* advisement, but the prosecutor did not want to introduce them at trial, so they were not admitted at trial.

[6] Although defendant's interview was recorded, there was no video or audio of the interview played at the hearing, and no recording of his interview was introduced at trial. During hearing on defendant's motion in limine, defense counsel referred to a transcript of the interview that appeared to be in both English and Spanish. The prosecutor objected to the "foundation of the document" and explained that he did not

*[footnote continued on next page]*

In Investigator Topete's view, defendant sufficiently understood English and Spanish because he spoke in both languages throughout his interview. But because Spanish was defendant's preferred language, Investigator Topete advised him of his *Miranda* rights in Spanish. Investigator Topete used a "*Miranda* card" in English and translated it to Spanish.

Investigator Topete testified that he had given Spanish *Miranda* warnings "hundreds" of times during his 20 years of experience in law enforcement. He gave defendant the following "routine warnings" in Spanish through a "nonverbatim" translation of an English *Miranda* card: "You have a right to remain silent; anything you say can and will be used against you in a court of law; you have a right to talk to an attorney and have him present with you during any questioning, if you wish one; if you cannot afford to hire an attorney, one will be appointed to represent you." Investigator Topete advised defendant of each of these "routine warnings" individually and confirmed that defendant understood them. Defendant confirmed that he did and did not ask any follow-up questions about the advisement.

Defendant argued that Investigator Topete's Spanish *Miranda* advisement was legally deficient because it was "not identical or sufficient to the English version" that would properly advise defendant of his *Miranda* rights. In particular, defense counsel questioned whether Investigator Topete properly advised defendant that anything he says, "can *and will*" be used against him. Defense counsel claimed that in making that specific

know "where it's coming from." The trial court reviewed the transcript and did not prohibit its use, but it is not in our record.

6

advisement, Investigator Topete used only the Spanish verb, *podra*, which means only "could," not "could and will" be used against you.  Thus, according to defendant's English translation of the Spanish interview, Investigator Topete told defendant "'Anything you say *could* be used against you in a court of law,'" not "anything you say could *and will* be used against you."  Investigator Topete testified, however, that *podra* in that context could mean "*will*" or "*could*" be used against you.

Based on Investigator Topete's testimony, the court was "satisfied" that he sufficiently advised defendant of his *Miranda* rights.  The court noted that the situation was a "good lesson" on why law enforcement should use standardized *Miranda* warnings, but found that there was "substantial compliance" with *Miranda*'s requirements.  The court found that, according to Investigator Topete's testimony, defendant "knew that he could have an attorney present . . . that he could have an attorney present during questioning and also for – available for in court . . . that the statements could be used against him in court . . . [and] that he had a right to remain silent."  The court also found that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

The court therefore denied defendant's motion in limine.  Several of his statements made to the Investigators after the *Miranda* advisement were introduced at trial, including his statements about the Home Depot incident, that he watched pornography on his phone, and that Doe's mattress had recently been thrown away.

7

## 2. *Applicable Law and Standard of Review*

Under *Miranda*, a suspect in custody "'must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'" (*Florida v. Powell* (2010) 559 U.S. 50, 50-61, italics added.) No precise words or formulation of these four warnings is necessary to satisfy *Miranda*'s requirements. (*Id*. at p. 60.) Instead, "'[t]he inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*."'" (*Ibid*.)

"When reviewing a *Miranda* ruling, 'we accept the trial court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda*.'" (*People v. Molano* (2019) 7 Cal.5th 620, 633.) In doing so, we give great weight to the trial court's conclusions, and must defer to its credibility determinations and resolution of disputed facts so long as they are supported by substantial evidence. (*People v. Whitson* (17 Cal.4th 229, 248.)

## 3. *Analysis*

Defendant argues Investigator Topete's advisement Spanish translation of an English "*Miranda* card" failed to satisfy *Miranda*'s second, third, and fourth

8

requirements.  We disagree.[7]

As to *Miranda*'s second requirement, Investigator Topete testified that he told defendant in Spanish that "anything you say can and will be used against you in a court of law."  When asked which Spanish verb he used in that sentence, Investigator Topete stated that he used *podra*, which means "will be used" in his interpretation, although he acknowledge that it could be interpreted as "could be used."

Either way, the advisement complied with *Miranda*.  The second *Miranda* warning is intended to make the suspect aware of the constitutional rights against self-incrimination and to remain silent, as well as the consequences of waiving them. (*Miranda*, *supra*, 384 U.S. at p. 469.)  Whether Investigator Topete told defendant that his statements *could* be used against him or *will* be used against him, the advisement reasonably conveyed to defendant that his self-incriminating statements might be used against him in court.  (See *People v. Johnson* (2010) 183 Cal.App.4th 253, 254 [no *Miranda* violation when officers advised the defendant that "her statements could be used in court but did not also state they 'will' be used in a court"].)

After receiving the advisement, which he acknowledged he understood, defendant could not have reasonably thought he was free to speak to the Investigators without running the risk of having his statements used against him in a prosecution.  Given that

---

[7] Defendant argues for the first time on appeal that Investigator Topete ""'tricked'"" him by telling him that they were *conversando*, meaning "'talking.'" Defendant forfeited the argument by not advancing it in the trial court, so we decline to consider it.  (*People v. Seijas* (2005) 36 Cal.4th 291, 301-302.)

defendant was being questioned by investigators "at the station" about Doe's serious allegations against him, defendant knew he was in an adversarial setting, that he was accused of violating the law, and that anything he said could be used in court against him. The advisement thus complied with *Miranda*'s second mandate—"that anything he said *could be* used against him in court." (*Duckworth v. Eagon* (1989) 492 U.S. 195, 203; *Miranda*, *supra*, 384 U.S. at p. 444 ["the person must be warned that he has a right to remain silent, that any statement he does make *may be* used as evidence against him," italics added.].)

Next, defendant contends Investigator Topete failed to inform him of *Miranda*'s third and fourth warnings, which must reasonably convey that a suspect has the right to an attorney present before and during questioning, even if the suspect is indigent and cannot afford to hire one. (*Duckworth v. Eagan*, *supra*, 492 U.S. at p. 204; *People v. Lujan* (2001) 92 Cal.App.4th 1389, 1399.) Investigator Topete satisfied both requirements.

Investigator Topete testified that he told defendant by translating an English *Miranda* card into Spanish, "you have a right to talk to an attorney and have him present with you during any questioning, if you wish one; if you cannot afford to hire an attorney, one will be appointed to represent you." When cross-examined, Investigator Topete explained that he told defendant "if he didn't have money for an attorney, one would be . . . appointed to represent him in court" . . . "if he wanted one," and that he had "'the right to talk to an attorney'" . . . "to represent you before or during our conversation."

10

The trial court credited Investigator's Topete testimony as credible and accurate, and we must defer to that factual finding. (*People v.* Whitson, *supra*, 17 Cal.4th at p. 248.) "[N]othing in the warnings given [to defendant] suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general." (*California v. Prysock* (1981) 453 U.S. 355, 360-361.) Instead, Investigator Topete told defendant that he had a right to an attorney free of charge and that an attorney could represent him before and during the interview. Taken as a whole, Investigator Topete's statements reasonably conveyed to defendant that he had the right to an attorney before and during the questioning and at trial, and that an attorney would be appointed to represent him at any time, even if he could not afford one.

Investigator Topete thus satisfied the third and fourth *Miranda* requirements. (See *People v. Sta Ana* (2021) 73 Cal.App.5th 44, 53-54 [first advisement that defendant had a right to attorney before and during questioning coupled with second advisement that defendant had a right to a "free, appointed attorney" satisfied *Miranda*]; see also *United States v. Frankson* (4th Cir. 1996) 83 F.3d 79, 81.) As a result, there was no *Miranda* violation. Defendant's statements to the Investigators were properly admitted.

B. *Interview Recording*

Defendant contends the trial court erred by denying his request to admit the entire video and audio recording of his interview with the Investigators. We disagree.

11

1. *Background*

The prosecutor moved in limine to admit statements defendant made during his interview that he (1) admitted to watching pornography on his cell phone and (2) admitted he had recently been alone with Doe in the Home Depot parking lot. The prosecutor also moved to exclude the rest of the interview. Defendant opposed the motion on the ground that he had "the absolute right" under Evidence Code section 356 to have the entire recording played for the jury if the prosecutor admitted the two requested statements from the video. The trial court agreed with defendant, telling the prosecutor that either the entire video would be admitted or none of it.

During the prosecutor's case-in-chief, the Investigators testified at length about their interview of defendant. Among other things, Investigator Topete testified that he was present to help translate, but defendant answered questions in English from "the get-go." Investigator Topete testified that defendant admitted he watched pornography on his phone and that he had recently been alone with Doe at a Home Depot parking lot for about five to 10 minutes to buy fruit from a fruit vendor. But when defendant was confronted with surveillance footage that show there was no fruit vendor and that his car was parked for 17 or 18 minutes, defendant said he did not know why he lied about buying fruit. Defendant then claimed that he was on his phone making calls and watching YouTube, but when the investigators told him that his phone records showed that no calls were made during that time and he was not using the internet, defendant had no explanation.

12

After the Investigators finished testifying about the interview, defendant asked the trial court to play the entire video of the interview and give the transcripts to the jury. Defendant argued the video was necessary to challenge the Investigators' credibility concerning his English comprehension and to show his understanding of English. In defendant's view, the jury could determine his ability to speak English only by viewing the entire video. Defendant also argued the jury could not fully understand his statements without seeing the entire video.

The trial court denied the request. As for defendant's English skills, the court noted that defendant had a certified Spanish translator at the trial, Investigator Topete sat in on the interview to help with translation, and the "multitude of family members" who testified could have testified about defendant's English comprehension. The court also observed that the video contained defendant's inadmissible hearsay statements and denials of Doe's allegations. Finally, the court found that the probative value of the video was outweighed by its prejudicial effect.

Defendant raised the issue again in a motion for a new trial. He argued the trial court's exclusion of the entire video violated his due process rights to a fair trial and to present a defense.

The trial court denied the motion. The court reiterated its ruling that admitting the entire video would have been cumulative, unduly time-consuming, prejudicial, and confusing. The court found that defendant was able to prove that he was not a native English speaker and may have not understood everything said in English during the

13

interview. He was also able to cross-examine the Investigators about his English skills and his denials during the interview, and "was able to prove" the circumstances of the interview through "other witnesses."

2. *Applicable Law and Standard of Review*

"Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Evidence "adverse to a defendant's case does not render it prejudicial within the meaning of [Evidence Code] section 352. [Citation.] In applying this statute we evaluate the 'risk of "undue" prejudice, that is, "'evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,'" not the prejudice "that naturally flows from relevant, highly probative evidence.'" [Citations.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 148.)

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) We will uphold the decision unless the trial court "exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas* (2012) 53 Cal.4th 771, 809.)

3. *Analysis*

At the outset, we note that there is no recording of defendant's interview or a transcript of it in the record on appeal. Without either of those, we cannot adequately

review defendant's arguments. We have no way of knowing what was discussed at defendant's interview beyond what we can glean from the Investigators' testimony, the trial court's statements, and counsel's argument, which is not evidence. (*People v. Hill* (1998) 17 Cal.4th 800, 845.) Defendant bears the burden of providing an adequate record on appeal, and he has failed to done so. (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)

But on this record, we conclude the trial court did not abuse its discretion for several reasons. First, the interview was between two hours (according to defendant) and four hours (according to the prosecutor). The trial court reasonably found that playing the entire hours-long video for the jury would have been unduly time-consuming. This could have been compounded by the delay that would have been necessary for the parties to obtain and review an official transcript of the recording, which defendant did not have at trial, and apparently did not obtain for his new trial motion.

Second, the main reason defendant wanted to introduce the entire video was to prove that he had limited English skills and thus may have not understood everything the Investigators asked. The trial court reasonably found, however, that defendant could prove the point by other means. To begin with, defendant had a Spanish translator at the trial. Investigator Topete testified that he sat in on defendant's interview in case he was needed for translation. Defendant could have asked several family witnesses who testified about his English skills. The trial court thus understandably found that playing

15

the entire video to establish defendant's understanding of English would have been unduly cumulative of other, readily available evidence.

Third, the trial court reasonably found that playing the entire recording would have been confusing. As both parties agreed, defendant and the Investigators made several inadmissible statements during the interviewing, which included hearsay statements and statements about punishment and lie detector tests. The jury thus likely would have had to review a long, intermittently redacted version of the recording while being instructed on what statements they could consider and for what purpose.

Finally, defendant contends the jury could have not understood the circumstances of his interview, including whether he spoke English well enough to understand the Investigators' questions, without watching the whole video. Again, the trial court reasonably found that defendant could argue the point through other means, including by cross-examining the officers, questioning family members, and pointing out that he had a Spanish translator at trial. There was abundant evidence beyond the interview recording that established defendant was not fluent in English and thus that he may not have fully understood the Investigators' questions.

For these reasons, the trial court reasonably found that the probative value of the interview recording was outweighed by other considerations. The trial court did not abuse its discretion under Evidence Code section 352 by refusing to admit the entire recording for the jury.

16

Defendant seemingly concedes the point, but argues that "'Evidence Code section 352 must yield to a defendant's due process right to a fair trial and to the right to present all relevant evidence of *significant* probative value to his or her defense.'" For the reasons explained, however, the recording did not have *significant* probative value given the ample evidence showing that defendant is not a fluent English speaker and thus may not have fully understood the Investigators.

In any event, "the routine application of provisions of the state Evidence Code law does not implicate a criminal defendant's constitutional rights." (*People v. Jones* (2013) 57 Cal.4th 899, 957.) "[O]nly evidentiary error amounting to a *complete preclusion* of a defense violates a defendant's federal constitutional right to present a defense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4, italics added.) That did not occur here. As outlined above, defendant had other means to present evidence in support of his defense.

Defendant argues the trial court violated his federal due process rights under *Crane v. Kentucky* (1986) 476 U.S. 683, but that case does not help him. There, the minor defendant claimed his confession was involuntary and sought to introduce evidence "that he had been detained in a windowless room for a protracted period of time, that he had been surrounded by as many as six police officers during the interrogation, that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a false confession." (*Id*. at p. 685.) The trial court refused to let the defendant present *any evidence* about the interrogation's duration and who attended it. (*Id*. at pp. 686-687.) The United States

Supreme Court held this "blanket exclusion" of any evidence about the circumstances of the defendant's confession precluded him from presenting a complete defense. (*Id*. at pp. 690-691.)

Here, however, the trial court did not impose a "blanket exclusion" on evidence about defendant's interview and whether he understood the Investigators' questions. Defendant cross-examined the Investigators about the interview and defendant's understanding of English. Josie testified that he spoke "good English" while his daughter described it as "broken English" and a psychologist testified that Spanish was his "preferred language." Most notably, defendant had a translator during the trial. Defendant was not precluded from introducing *any evidence* attacking the credibility of his incriminating statements like the *Crane* defendant.

In any event, defendant has failed to show that excluding the recording was prejudicial. We will not reverse the judgment based on an evidentiary error unless the error was prejudicial. (*People v. Carrillo* (2004) 119 Cal.App.4th 94, 103.) Because we conclude the trial court's exclusion of the recording of his interview did not implicate defendant's federal constitutional rights, we review for prejudice under the state law standard, which asks whether it is more probable than not that defendant would have received a more favorable result had the recording been admitted. (See *ibid*.)

The record does not contain a copy of defendant's recorded interview or a transcript of the interview. We therefore have no way of knowing whether the recording would have helped defendant's defense. For all we know, it could have bolstered the

18

Investigators' testimony that defendant spoke English well enough to be interviewed in English and fully understood all of their questions. On this inadequate record, it is entirely speculative that the recording would have showed defendant did not understand the Investigators' questions or otherwise undermined the credibility of their testimony about what defendant said during the interview. Speculation cannot show reversible error. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1254.) Defendant has therefore failed to meet his burden of showing the trial court prejudicially excluded the entire recording of his interview with the Investigators.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

19