*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 25, 2024

Plaintiff-Appellee,

v

No. 362924
Livingston Circuit Court

LANCE ANDRE POISSON,

LC No. 21-027021-FC

Defendant-Appellant.

Before: GADOLA, C.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals by right following his conviction by a jury of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration involving victim under 13 years of age and defendant 17 years of age or older). Defendant was sentenced to 25 to 50 years' imprisonment with credit for 60 days served. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant was charged with, and convicted of, one count of CSC-I on the basis of an incident during which he placed his penis in the mouth of his then-wife's son, AB, who was approximately five years old at the time. AB testified regarding the incident at trial. Significantly to this appeal, defendant was interviewed by Livingston County Sheriff's Office Detective Curt Novara, following which defendant agreed to take a polygraph examination. An independent special agent from the Federal Bureau of Investigation (FBI), Bradford Beyer, conducted that examination.

-1-

At the outset of the examination, Beyer provided defendant with a written statement of his *Miranda*[1] rights.[2] Defendant indicated that he understood his rights, both verbally and by signing the advice of rights form acknowledging his understanding. Defendant was also provided a separate explanation and advice of rights form specifically regarding the polygraph examination. He signed this form, indicating that he understood those rights and voluntarily consented to the polygraph examination. Beyer explained to defendant that the test was voluntary and that defendant could leave at any time.

Following the actual polygraph examination, Beyer continued by indicating his belief that defendant had committed the charged offense and then discussing religious matters with defendant. According to Beyer's testimony, he and defendant discussed their shared Christian faith, the power of forgiveness, and getting help for the victim. Defendant then confessed that the allegations were true and made incriminating statements. Those statements were admitted into evidence at trial without objection to their admissibility.[3] As previously noted, the jury found defendant guilty.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] Beyer gave testimony specifically referencing the polygraph examination and providing details of the entire interaction with defendant, including the "pretest," the actual polygraph examination, and the "posttest," during a hearing that was conducted outside the presence of the jury for purposes of ruling on defendant's request to give a jury instruction under MCL 763.9 regarding the portions of the interrogation that were not recorded. Pursuant to MCL 763.8(2), a "law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation." MCL 763.9 provides:

> Any failure to record a statement as required under section 8 of this chapter[, MCL 763.8,] or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under section 8(3), the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

Beyer also testified in front of the jury specifically regarding defendant's incriminating statements made during the interrogation that occurred during the posttest period following the examination. During his testimony in front of the jury, Beyer did not refer to the administration of a polygraph examination. On appeal, defendant does not challenge the trial court's ruling denying his request for the instruction under MCL 763.9.

[3] As will be explained later in this opinion, defendant did not pursue an argument that the statements were inadmissible for either being obtained involuntarily or in violation of *Miranda* until after trial when he filed a motion for a new trial. The record indicates that defendant filed a

Defendant filed his claim of appeal in this Court. He also moved in the trial court for a new trial or *Ginther*[4] hearing, as well as to correct an invalid sentence. With respect to the first motion, defendant argued that he was entitled to a new trial because his incriminating statements to Beyer should have been suppressed for being obtained involuntarily and in violation of *Miranda*. Defendant contended that he was entitled to a second *Miranda* warning after Beyer informed him that he failed the polygraph test and before Beyer continued with his interrogation that led to defendant's incriminating statements. Defendant also argued this failure rendered his statements involuntary.

Furthermore, defendant argues that his statements were involuntary and the product of improper psychological coercion because Beyer "preyed on" defendant's Christian faith and belief in the power of forgiveness, in addition to emphasizing the importance of getting help for the victim, to obtain a confession from defendant. Defendant maintained that he was entitled to a new trial without the use of his post-polygraph statements in the prosecution's case-in-chief. In the alternative, defendant argue that his trial counsel was constitutionally ineffective for failing to move to suppress those statements and that he was entitled to a new trial because of the ineffective assistance of counsel. Defendant additionally requested a *Ginther* hearing in the event the trial court did not find the alleged errors apparent from the record.

In his motion to correct an invalid sentence and for resentencing, defendant argued that his statutory mandatory minimum sentence of 25 years, which exceeded his guidelines range by 230 months, was unconstitutional. Defendant acknowledged that this argument could not succeed under existing binding appellate court caselaw, but he desired to preserve the argument.

The trial court held a hearing on the motions. The parties presented oral arguments, but no evidence was taken. The trial court denied each of defendant's motions.

## II. ADMISSIBILITY OF DEFENDANT'S STATEMENTS

On appeal, defendant challenges the admissibility of his post-polygraph incriminating statements to Beyer on the grounds that (1) the statements were involuntary because they were the product of improper psychological coercion in violation of his due-process rights and (2) that the statements were obtained in violation of *Miranda* because defendant was entitled to a new *Miranda* warning after Beyer informed him that he failed the polygraph examination and before Beyer asked defendant further questions.

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

---

pretrial motion to suppress defendant's statements based on these grounds but apparently withdrew the motion or otherwise declined to pursue it. There is no dispute that the trial court never conducted an evidentiary hearing or otherwise ruled on this suppression issue before or during trial.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

We first must determine the proper standard of review to apply to these claims, which requires us to determine whether defendant properly preserved these arguments. Defendant contends that these arguments were preserved through his posttrial motion for a new trial.

However, "[i]n order to properly preserve an issue for appeal, a defendant must raise objections at a time when the trial court has an opportunity to correct the error . . . ." *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (quotation marks and citation omitted; ellipsis in original). Here, defendant argues that the statements at issue should not have been admitted at trial. The time at which such an alleged error could have been corrected was before the statements were admitted. Accordingly, this Court has held that a claim that a defendant's statements should have been suppressed for being involuntary or obtained in violation of *Miranda* is preserved by filing a pretrial motion to suppress and obtaining a *Walker*[5] hearing. *People v Manning*, 243 Mich App 615, 625; 624 NW2d 746 (2000); *People v Whitehead*, 238 Mich App 1, 7 n 5; 604 NW2d 737 (1999); *People v Howard*, 226 Mich App 528, 537; 575 NW2d 16 (1997).

Thus, although defendant raised his involuntariness and *Miranda* arguments in his motion for a new trial and the trial court decided those issues against him, these facts are insufficient to preserve these particular issues for appeal because they were pursued for the first time after trial and no *Walker* hearing was held, thus preventing the trial court from having an opportunity to decide the issues at a time that would have made a difference in the context of the trial. *Pipes*, 475 Mich at 277. "Preservation serves the important need to encourage all trial participants to seek a fair and accurate trial the first time around . . . ." *Id.* (quotation marks and citation omitted; ellipsis in original). Defendant's challenges to the admissibility of his statements, on voluntariness and *Miranda* grounds, are unpreserved.

Neither the introduction of an alleged involuntary confession nor an incriminating statement allegedly obtained in violation of *Miranda* present claims of error that have been deemed within the narrow class of errors that are considered "structural." *Arizona v Fulminante*, 499 US 279, 295; 111 S Ct 1246; 113 L Ed 2d 302 (1991); *Id.* at 292 (opinion by White, J.); *Whitehead*, 238 Mich App at 7. We review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009).

> Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant. Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings. Defendants bear the burden of persuasion. The failure to establish a plain error that affected a substantial right precludes a reviewing court from acting on such an error. However, even if defendants show plain error that affected a substantial right, reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." [*Pipes*, 475 Mich at 279 (citations omitted; ellipsis an alteration in original).]

---

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

Defendant also argues on appeal that he was denied the effective assistance of counsel because his trial counsel did not pursue motions to suppress the statements for being involuntary or obtained in violation of *Miranda*. Defendant preserved his ineffective assistance of counsel claims by moving for a new trial. *People v Sabin (On Second Rehearing)*, 242 Mich App 656, 658; 620 NW2d 19 (2000) ("In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing."). However, the trial court in this case denied defendant's request for a *Ginther* hearing in addition to denying the motion for a new trial. Our review is thus limited to mistakes apparent from the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). An ineffective assistance of counsel claim presents a mixed question of law and fact. *Id*. "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*.

> "[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (citations omitted).]

## B. INVOLUNTARY CONFESSION

Defendant first argues on appeal that his post-polygraph-examination statements were involuntary, and thus inadmissible, because they were the product of psychological coercion that overcame his free will. Defendant maintains that Beyer's appeals to defendant's religious beliefs, the power of forgiveness, and the need to get help for the victim were impermissibly coercive and made defendant's confession involuntary.

A defendant's confession is inadmissible at trial if the confession was the involuntary product of coercive state action because the use of such a statement violates a defendant's constitutional protection against self-incrimination and right to due process of law. *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023); US Const, Ams V and XIV; Const 1963, art 1, § 17. "Coercive tactics that can overbear an individual's will include both physical intimidation and psychological pressure." *Id*. The test for a statement's voluntariness is "whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired . . . ." *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988) (quotation marks and citation omitted; ellipsis in original).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether

the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

Here, with respect to the *Cipriano* factors, the record indicates that defendant was more than 30 years old, had graduated high school, and had attended one year of post-secondary school. Defendant was informed of his constitutional rights pursuant to *Miranda*, and he indicated that he understood and waived those rights. The entire interaction, including the pretest, the polygraph examination, and the posttest interrogation lasted less than three hours. The discussion of which defendant now complains, involving matters of religion and forgiveness, only lasted approximately 10 minutes according to Beyer's testimony. The door to the room in the sheriff's office where the interview occurred was unlocked, and Beyer informed defendant that he was free to leave at any time. There is no evidence that defendant was injured, intoxicated, or in ill health, and defendant was not deprived of food, sleep, water, or medical attention. There is also no evidence that he was physically abused or threatened.

Although defendant quotes the *Cipriano* factors in his appellate argument, he does not directly address the application of any of these factors to the factual circumstances of this case. Instead, defendant focuses solely on arguing that Beyer used psychological coercion by "prey[ing]" on defendant's Christian faith and belief in the power of forgiveness to extract a confession from him. In *Cipriano*, the Court stated that the listed factors did not constitute an exhaustive list and that no single factor was dispositive on the issue of voluntariness. *Cipriano*, 431 Mich at 334. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id*.

Moreover, merely referencing an interrogee's religious beliefs does not constitute improper coercion in this context. In *Berghuis v Thompkins*, 560 US 370, 374-375; 130 S Ct 2250; 176 L Ed 2d 1098 (2010), the defendant was given *Miranda* warnings and interrogated by two police officers for about 3 hours concerning a shooting. Approximately 2 hours and 45 minutes into the interrogation, the defendant was asked if he believed in God and if he prayed to God. *Id*. at 376. The defendant answered affirmatively as his eyes filled with tears. *Id*. One of the officers then asked the defendant, " 'Do you pray to God to forgive you for shooting that boy down?' " *Id*. The defendant answered affirmatively. *Id*. The Supreme Court considered the totality of the factual circumstances surrounding the confession to determine that it was not coerced. *Id*. at 386-387. As specifically relevant to the issue presented here, the *Berghuis* Court stated, "The fact that [the officer's] question referred to [the defendant's] religious beliefs also did not render [his] statement involuntary. [T]he Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *Id*. at 387 (quotation marks and citation omitted; fourth alteration in original).

Considering the totality of the circumstances in this case, defendant has not demonstrated that his challenged statements were involuntary. *Cipriano*, 431 Mich at 333-334. He therefore has failed to demonstrate that any error occurred by admitting those statements into evidence. *Pipes*, 475 Mich at 279.

Defendant additionally argues that his trial counsel was ineffective for not seeking to suppress his statements on voluntariness grounds. However, as we have just explained, defendant has failed to demonstrate on appeal that his statements were involuntary, and he thus has not shown that they were inadmissible. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. MIRANDA VIOLATION

Next, defendant argues that his post-polygraph-examination statements should have been suppressed because they were obtained in violation of *Miranda*.

To protect the right guaranteed by the state and federal constitutions "against compelled self-incrimination, before any custodial interrogation, the police must give a suspect the now-familiar *Miranda* warnings." *People v Mathews*, 324 Mich App 416, 424-425; 922 NW2d 371 (2018). "[I]f the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *Id*. at 426 (quotation marks and citation omitted). "Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561-562; 926 NW2d 811 (2018).

Defendant argues that he was entitled to a second *Miranda* warning after Beyer told him that he failed the polygraph examination and before Beyer initiated the further questioning that led to defendant's confession. As defendant acknowledges, he was informed of his *Miranda* rights before the polygraph examination. The record also indicates that defendant expressed his understanding of those rights and his desire to waive them. There is nothing in the signed advice of rights form indicating that it was limited solely to the actual polygraph examination and would not apply to any posttest interactions. This form does not even mention the polygraph. Instead, there was a separate advice of rights form specifically addressed to the polygraph examination. Both of these forms were executed by defendant before the polygraph examination began. Furthermore, although Beyer discussed three conceptually different sections of the interview, which he described as the pretest, in-test, and posttest, it is still evident that this was essentially a single, continuous incident between Beyer and defendant.

Defendant argues that in *People v Ray*, 431 Mich 260, 276; 430 NW2d 626 (1988), our Supreme Court held that there exists a requirement that an individual who voluntarily consents to a polygraph examination must be readvised of the individual's *Miranda* rights between the conclusion of the polygraph examination and post-examination questioning when the individual was adequately advised of those constitutional rights at the outset of the polygraph examination. We cannot find any language supporting defendant's legal assertion in *Ray*. Rather, in *Ray*, our Supreme Court reiterated that when considering the voluntariness of a confession, the question is simply whether the totality of the circumstances evidence a knowing and voluntary waiver of those constitutional rights. *Id*. Here, the totality of the circumstances, which we have described above, demonstrate that defendant was adequately apprised of his constitutional rights and gave a knowing and voluntary waiver. As indicated in *Ray*, there is no per se requirement for a new *Miranda* warning as defendant contends. *Id*.; accord *Berghuis*, 560 US at 386 ("The fact that [the

defendant] made a statement about three hours after receiving a *Miranda* warning does not overcome the fact that he engaged in a course of conduct indicating waiver. *Police are not required to rewarn suspects from time to time*.") (emphasis added).

Defendant has therefore failed to demonstrate that his statements were inadmissible for being obtained in violation of *Miranda*. *Ray*, 431 Mich at 276. Accordingly, defendant has not established that an error occurred in admitting those statements at trial. *Pipes*, 475 Mich at 279.

Defendant also argues that his trial counsel was ineffective for not seeking to suppress his statements based on the alleged *Miranda* violation. However, as we have just explained, defendant has failed to demonstrate on appeal that his statements were obtained in violation of *Miranda*, and he thus has not shown that they were inadmissible. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

## III. SENTENCE

Finally, defendant argues that the 25-year minimum sentence required by MCL 750.520b(2)(b) should be considered unconstitutional and that his sentence is not proportionate or reasonable. Defendant contends that this sentence was 230 months higher than the top end of his guidelines range of 42 to 70 months, thereby violating his due process rights, imposing a disproportionate and unreasonable sentence, and inflicting cruel and/or unusual punishment.

Defendant raised these arguments in the trial court in his motion to correct an invalid sentence and for resentencing. Defendant's constitutional arguments are therefore preserved. *People v Harper*, 479 Mich 599, 642; 739 NW2d 523 (2007) ("[D]efendant preserved the constitutional challenge to his sentence by raising this issue in a motion for resentencing before the circuit court."). Questions of constitutional law are reviewed de novo. *Id*. at 610. "The party challenging the constitutionality of a statute has the burden of proving the law's invalidity." *People v Konopka (On Remand)*, 309 Mich App 345, 360; 869 NW2d 651 (2015). Regarding defendant's other arguments, "[t]here are no special steps that a defendant must take to preserve the question whether the sentence was proportional; a defendant properly presents the issue for appeal by providing this Court a copy of the presentence investigation report." *People v Walden*, 319 Mich App 344, 350; 901 NW2d 142 (2017). Defendant has provided a copy of the presentence investigation report to this Court. "Further, there is no preservation requirement when the trial court imposes a sentence more severe than the sentencing guidelines recommend." *Id*. at 350-351.

Defendant was sentenced pursuant to MCL 750.520b(2)(b), which provides as follows:

(2) Criminal sexual conduct in the first degree is a felony punishable as follows:

* * *

(b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

This Court has held that there "is a presumption not only of proportionality for a legislatively mandated sentence, but of validity as well." *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991); see also *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011) ("Legislatively mandated sentences are presumptively proportional and presumptively valid."). "If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose a sentence in accordance with that statute," and "[i]mposing a mandatory minimum sentence is not a departure under this section." MCL 769.34(2)(a). "Our Supreme Court and this Court have consistently explained that MCL 750.520b(2)(b)'s 25-year provision imposes a mandatory *minimum* sentence." *People v Roy*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359894); slip op at 4. "[T]he sentencing guidelines range does not apply to crimes for which there is a mandatory sentence." *Brown*, 294 Mich App at 392, citing MCL 769.34(5). "Moreover, imposition of a mandated sentence does not constitute a departure from the guidelines." *Brown*, 294 Mich App at 392.

We now turn to defendant's appellate arguments.[6] First, to the extent he contends that he should have been sentenced to a minimum sentence that was within his guidelines range and that his 25-year minimum sentence was an upward departure, defendant is incorrect because his 25-year minimum sentence was required by statute and therefore was not subject to the sentencing guidelines and did not constitute a departure from the guidelines. *Id*; MCL 769.34(2)(a); MCL 750.520b(2)(b).

Next, defendant argues that being subjected to "a mandatory minimum sentence without any regard to the circumstances of the offense and the offender" denied defendant "his due process right to an individualized sentence." Defendant acknowledges *Williams*, but he argues that case was wrongly decided because it essentially condones this alleged violation of due process. Defendant contends that the statutorily mandated minimum sentence in MCL 750.520b(2)(b) violates the due-process clauses of both the federal and state constitutions, see US Const, Ams V and XIV; Const 1963, art 1, § 17, by denying him an individualized sentence.

It is axiomatic that "in any civilized society, punishment should be made to fit the crime and the criminal." *People v Babcock*, 469 Mich 247, 262; 666 NW2d 231 (2003). Hence, "sentencing must be individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing . . . ." *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980). "It is a precept of justice that punishment for crime should be graduated and proportioned to the offense." *Babcock*, 469 Mich at 262, quoting *Weems v United States*, 217 US 349, 367; 30 S Ct 544; 54 L Ed 793 (1910).

However, our Supreme Court has instructed us that "the ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001), citing Const. 1963, art. 4, § 45. Our Supreme Court has explained that the legislative criminal sentencing scheme for allocating "punishment over the

---

[6] In doing so, we recognize that defendant has acknowledged that the current state of the law, as set forth in the relevant statutes and binding caselaw that will be applied in our analysis, does not support granting the relief he seeks and that defendant raises these arguments in an attempt to argue for a change in the law.

full spectrum of criminal behavior" reflects an intent to provide the most severe punishments for the most severe crimes and to impose harsher punishments on repeat offenders. *People v Milbourn*, 435 Mich 630, 650-651; 461 NW2d 1 (1990). The Court called the Legislature's approach for allocating punishments the "principle of proportionality," which the Court also adopted as the guiding principle for the judiciary to follow in imposing sentences within the limits set by the Legislature. *Id*. at 650-654. Our Supreme Court has also explained that the "Legislature has subscribed to this principle of proportionality in establishing mandatory sentences as well as minimum and maximum sentences for certain offenses." *Babcock*, 469 Mich at 263.

Here, defendant argues that the mandatory minimum sentence in MCL 750.520b(2)(b) violates his substantive due process rights by denying him an individualized sentence.

"The United States and Michigan Constitutions protect individuals from the deprivation of life, liberty, or property without due process of law." *Konopka*, 309 Mich App at 366; see also US Const Ams V and XIV; Const 1963, art 1, § 17. "For a challenge to a statute on the grounds of a substantive due process violation, a challenger must show that the statute is unrelated to a legitimate government purpose and thus, essentially arbitrary." *Konopka*, 309 Mich App at 366-367. In this case, defendant's argument seems to boil down to a claim that that he has a right to be free from any legislatively mandated minimum sentence. He does not cite any authority for such a right, nor does he advance any argument that it should somehow constitute a fundamental right. Because there is no alleged infringement of a fundamental right at stake, we review defendant's claim that the challenged statute violates substantive due process under the rational-basis test. *Dobbs v Jackson Women's Health Org*, 597 US 215, 237-238, 300; 142 S Ct 2228; 213 L Ed 2d 545 (2022); *Konopka*, 309 Mich App at 367; *People v Sleet*, 193 Mich App 604, 605-606; 484 NW2d 757 (1992). Under rational-basis review, the question is "whether the legislation is rationally related to a legitimate government purpose." *Konopka*, 309 Mich App at 367.

Here, defendant has not even attempted to address the legal framework for due-process claims. That the statutory provision at issue is, in defendant's view, "undesirable, unfair, unjust, or in humane," is insufficient to demonstrate that this Court should hold the statute unconstitutional; as we have been instructed, arguments about policy and the wisdom of a statute should be addressed to the Legislature. *Id*. at 360-361. Because defendant has failed to adequately present this issue for review, we could treat it as abandoned. *Id*. at 366. Regardless, it is clear that the state has a legitimate interest in protecting young children from sexual abuse and that imposing a significant mandatory minimum sentence against individuals over 17 who commit CSC-I against children under 13 is rationally related to that interest. Defendant thus has not demonstrated that this statute violates substantive due process. *Konopka*, 309 Mich App at 366-367; cf also *Brown*, 294 Mich App at 390-391 ("Our Supreme Court has held that the graduated system of punishment adopted by the Legislature demonstrates a careful consideration and balancing of the age of the victim and the nature of the sexual conduct. The fact that the Legislature adopted harsher punishment for those crimes involving penetration of a victim under the age of 13, even for a first-time offense, indicates that such crimes are indeed grave.") (citations omitted).

Defendant does not explain how a legislatively mandated minimum sentence cannot be part of the individualized sentencing criminal defendants are afforded. See *Williams*, 189 Mich App at 403-404 (rejecting the defendant's argument that "a statutorily mandated minimum sentence fails to take into account the nature of the offense and the offender's background,"

reasoning that the Legislature followed the principle of proportionality in crafting the entire sentencing scheme, including the creation of mandatory minimum sentences for certain offenses). Furthermore, our Supreme Court has explained:

> [T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature. The authority to impose sentences and to administer the sentencing statutes enacted by the Legislature lies with the judiciary.
>
> It is, accordingly, the responsibility of a circuit judge to impose a sentence, but only *within the limits* set by the Legislature. For example, no matter how unusual the circumstances of an offense or an offender, a judge is constrained by the Legislature's determination of the maximum penalty and, if applicable, the minimum penalty. Thus, a judge cannot impose a twenty-year maximum sentence on an especially depraved individual convicted of unarmed robbery (a fifteen-year offense). Nor can a judge impose a one-year sentence on a previously upright citizen who has been convicted of felony-firearm (punishable with a flat two-year term for first-time offenders). [*Hegwood*, 465 Mich at 436-438 (citations omitted).]

Finally, defendant argues that his 25-year mandatory minimum sentence is cruel and/or unusual punishment in violation of the federal and state constitutions. The Eighth Amendment prohibits "cruel and unusual punishments," US Const, Am VIII, and the analogous provision of the Michigan Constitution prohibits "cruel or unusual punishment," Const 1963, art 1, § 16. Our Supreme Court has interpreted the provision in Michigan's constitutional provision to provide broader protections than the Eighth Amendment. *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992). Hence, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted).

> "[U]nder the Michigan Constitution, the prohibition against cruel or unusual punishment include[s] a prohibition on grossly disproportionate sentences."
>
> This Court employs the following three-part test in determining whether a punishment is cruel or unusual: "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." "Legislatively mandated sentences are presumptively proportional and presumptively valid." "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." [*People v Burkett*, 337 Mich App 631, 636–37; 976 NW2d 864 (2021) (citations omitted; alterations in original).]

Here, defendant argues that he "can present unusual circumstances that render his mandatory minimum sentence of 25 years as disproportionate" because his only prior criminal history consisted of a misdemeanor offense for driving while license expired, he has no previous history of violence or victimization, he graduated from high school and attended one year of

college, he owned his own business and home at the time of the offense, he had no history of serious substance abuse issues, and he is a father who has the support of his mother and stepfather. Defendant further argues regarding the first factor that his sentence is overly severe because it was mandatory and precluded the sentencing court from considering any individualized factors or mitigating circumstances.

In *Benton*, 294 Mich App at 203, this Court similarly addressed a defendant's argument that the 25-year minimum sentence in MCL 750.520b(2)(b) was cruel and/or unusual punishment that violated the federal and state constitutions. Regarding the severity of the sentence and gravity of the offense, this Court stated that because of the "immaturity and innocence" of children, it is the well-established public policy of this state to "protect children below a specific age from sexual intercourse" by delineating statutory rape as a "strict-liability offense." *Id*. at 205. We further observed that "this policy focuses on the exploitation of the victim" and that the Legislature therefore "did not intend to withdraw the law's protection of the victim in order to protect the offender." *Id*.

As we concluded in *Benton*, we also conclude in this case that "[t]his statement of Michigan public policy conflicts with defendant's attempt to minimize the gravity and severity of [his] offense." Defendant's asserted personal characteristics do not overcome the gravity of the sexual abuse defendant committed against a young child. This factor does not weigh in favor of finding this sentence to be cruel or unusual.

Regarding the second factor, defendant argues that his sentence is more severe than other sentences imposed for what defendant asserts are more serious crimes—in defendant's opinion— and offenders with more violent backgrounds. However, defendant ignores the strong public policy reasons that we have already discussed for treating sexual assaults against children under 13 by individuals over 17 as particularly serious crimes. Defendant does not specify any specific crime that he believes is actually more serious and is subject to a less significant sentence. Although defendant refers to the 20-year minimum sentence that the defendant received for CSC-I in *People v Warner*, 339 Mich App 125, 129-130; 981 NW2d 733 (2021), he glosses over the fact that the victim in that case was not under 13. We find no disparity in a minimum sentence of five more years being the mandatory minimum sentence when the victim is less than 13 years old, as in the present case. Furthermore, in *Benton*, we rejected essentially the same argument that is now raised by defendant here:

> Defendant also argues that the mandatory 25–year minimum sentence is unduly harsh compared to penalties for other offenses under Michigan law, including many violent offenses. We are not persuaded that these comparisons render the 25–year minimum sentence disproportionate to the offense. The perpetration of sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation. Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences. The unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25–year minimum sentence is unduly harsh. [*Benton*, 294 Mich App at 206.]

We adopt this reasoning as our own in this case as well. Finally, with respect to the third factor, defendant does not argue that a comparison with penalties imposed in other states for the same offense would support his constitutional challenge.

Accordingly, we conclude that defendant has failed to demonstrate that the mandatory minimum sentence in MCL 750.520b(2)(b) constitutes unconstitutional cruel and/or unusual punishment.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Sima G. Patel